(November 26, 1897.)

# SPAULDING v. COEUR D'ALENE RAILWAY AND NAVIGATION COMPANY.

### [51 Pac. 408.]

RAILROAD CONSTRUCTION CONTRACT—HARMLESS ERROR.—The court found that a certain contract was entered into by the parties, but omitted to find· that certain specifications referred to in said contract, and made a part thereof, were a part of the said contract. *Held,* under the facts of this case, that such omission was harmless error.

CONFLICT IN EVIDENCE—FINDING MUST STAND.—Where there is a substantial conflict in the evidence, a finding of fact by the court, based thereon, will not be disturbed.

ENGINEER CONSTITUTED UMPIRE.—Under the provisions of a contract for the construction of a railroad which provides that "to prevent disputes and misunderstanding, the engineer of the company is constituted the umpire, to settle the same," and also to decide the "amount and quantity, character and kind of work and material performed and furnished, and that his decision shall be binding, final and conclusive," *held,* that said stipulation imposes on the company the duty of employing an engineer who is thoroughly competent, upright and honest, and also to see to it that such engineer performs such duties fairly and honestly.

CLASSIFICATION OF MATERIAL TO BE REMOVED.—Where, under a contract between plaintiff and defendant, it is specified that grading shall include earth, "loose rock" and "solid rock," after defining the terms "loose rock" and "solid rock," earth is defined as follows: "All other material of whatever nature, including boulders measuring less than one cubic foot, and loose sand, rock, slate and shale, which can be excavated with picks, shall be estimated and considered earth, and under the head of excavation or embankment, as the case may be," and in the progress of the work hard-pan is struck that cannot be excavated with picks, but requires blasting, and the plaintiff applied to the defendant for a "hard-pan" classification, and was informed that he should have a fair classification, under the contract, as to the hard-pan, the plaintiff is entitled to recover a reasonable compensation per cubic yard for removing such hard-pan.

QUANTUM MERUIT.—Where one party to a contract is prevented from completing the contract within the time specified, by reason of the other party's neglect, failure or refusal to perform his part, he is not obliged to bring his action upon the contract to enforce payment, but may resort to the *quantum meruit* to obtain his compensation.

RESCINDING CONTRACT.—If the acts of one party to a contract be such as to prevent the other from performing his part within the time specified, he may rescind or abandon the contract and recover under a *quantum meruit.*

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

Dudley, Bunn & Dudley and Albert Allen, for Appellant.

It was error to allow respondent seventy cents per cubic yard for the removal of hard-pan. The specifications for grading contained in the contract provide as follows: Grading shall include earth, loose rock and solid rock. Loose rock shall include all detached masses of rock or boulders measuring not less than one cubic foot and less than one cubic yard, and all slate and shale in place which can be removed without blasting, although blasting may occasionally be resorted to. Solid rock shall include all rock in place and boulders measuring one cubic yard and upward, in removing which it is necessary to resort to drilling and blasting. Earth—all other materials of whatever nature including boulders measuring less than one cubic foot, and loose sand rock, slate and shale which can be excavated with picks shall be estimated and considered as earth, and under the head of excavation or embankment, as the case may be. Since it is conceded that the substance called "hard-pan" is neither solid rock nor loose rock, it is necessarily "earth" under these specifications. (*Wilkin v. Ellensburg Water Co.,* 1 Wash. 236, 238, 24 Pac. 460.) Assuming, but not conceding, that there was a valid rescission of the contract by the respondent, its specifications with reference to the classification of the material to be removed and the payment to be made thereon would still control. (*City of Chicago v. Sexton,* 115 Ill. 230, 2 N. E. 263-265; *Todd v. Huntington,* 13 Or. 9, 4 Pac. 295; *Blood v. Wilson,* 141 Mass, 25, 6 N. E. 362, 364; *Carroll v. Welsh,* 26 Tex. 147; *City of Sherman v. Conner,* 25 S. W. 321, 322; *Eakright v. Torrent,* 105 Mich. 294, 63 N. W. 293, 294; *McGregor v. Ross' Estate,* 96 Mich. 103, 55 N. W. 658, 660; 2 Sutherland on Damages, 523.) By proceeding with the work without objection after notice that a hard-pan classification would not be allowed, Mr. Spaulding waived all right to recover upon such

classification. (*Nounnan v. Sutton Co. Land Co.,* 81 Cal. 1, 22 Pac. 515; *Saratoga etc. R. R. Co. v. Row,* 24 Wend. 74, 76, 35 Am. Dec. 598.)

Willis Sweet and Turner & Forster, for Respondent.

We were entitled to bring this action in its present form, and to the relief prayed, not only because of the accounting, but we were obliged to adopt this form of action, because not having executed the agreement, we could not sue on the contract. We might, perhaps, have brought an action for breach of contract and asked for damages; but that would not necessarily have embraced the accounting. Indeed, we were not under obligations to follow the prices stipulated in the contract, for the reason that its breach was not brought about through the fault or negligence of respondent. The principles governing an action of this kind are clearly defined in the following cases, and, in our judgment, in view of the testimony already cited as to the facts, justify the legal conclusions made by the court below. There are but two conclusions of law over which legal controversies can arise. The third and fourth conclusions (there being four in all) depend upon the first and second. The first and second conclusions are sustained by the following authorities: *Herrick v. Belknap's Estate and Vermont Cent. Ry.,* 27 Vt. 673. The case is also found in 1 Redfield's American Railway Cases, 305; *Dubois v. Delaware etc. Canal Co.,* 4 Wend. 283; *Dubois v. Delaware etc. Canal Co.,* 12 Wend. 333; *Delaware etc. Canal Co. v. Dubois,* 15 Wend. 85; *Merrill v. Ithaca etc. Ry.,* 16 Wend. 586, 30 Am. Dec. 130, and note. The same decision appears in 1 Redfield's American Railway Cases, 322. In the case at bar, we were not bound to the prices in the contract, because appellant's breach of contract resulted in material loss. (2 Parsons on Contracts, 522, 523.) The authority in this instance goes to the point of our right to recover under the *quantum meruit* rule; indeed, states that it is our only remedy or form of relief. (*Linningdale v. Livingston,* 10 Johns. 34; *McMahon v. New York etc. R. R.,* 20 N. Y. 463; Rorer on Railways, 461.)

SULLIVAN, C. J.—The appellant, the Coeur D'Alene Railway and Navigation Company (a corporation), entered in-

to a contract with William L. Spaulding, the respondent, on the
ninth day of August, 1886, by the terms of which respondent
agreed to construct a line of railway from Old Mission, in
Kootenai county, to Wardner Junction, in Shoshone county—a
distance of about fourteen miles. The work of grading was to
be completed, under the terms of said contract, by the tenth day
of October, 1886. Work was commenced about the 20th of
August—a few days after said contract was entered into. Prior
to entering into said contract, appellant's chief engineer fur-
nished an approximate estimate, upon which bids were offered.
In said estimate, the quantity of solid rock to be removed was
placed at eight thousand cubic yards. In the final estimate
made by appellant's engineer, the trial court allowed respond-
ent for eighteen thousand yards of solid rock. The approx-
imate estimate of the cost of said road, upon which the rival
contractors made their bids, was $35,000, while it is admitted
by appellant's engineers that said road cost over $73,528.98.
These facts are stated to show that the work in constructing
said road, and its cost, were more than double the estimates
made by appellant's chief engineer. Under the terms of said
agreement, respondent was to receive nineteen and one-third
cents per cubic yard for all earth work, fifty-five cents per
cubic yard for all loose rock work, one dollar and twenty-five
cents per cubic yard for all solid rock work, and for laying
track, including surfacing roadbed and laying ties, $300 per
mile, and to have said work all done by October 15, 1886.
Also, approximate estimates of the work done under the con-
tract were to be made at the end of each calendar month by the
chief engineer of the company, or his assistants, and payments
thereon to be made on the fifteenth day of the next ensuing
month, less previous payments, and less fifteen per cent of the
amount of each monthly estimate, until the completion of the
contract. Under the specifications attached to said contract,
it is stipulated that grading shall include earth, loose rock,
and solid rock; and the terms "loose rock" and "solid rock"
and "earth" are defined. "Earth" is defined as follows: "All
materials, of whatever nature, including boulders measuring
less than one cubic foot, and loose sand rock, slate and shale,
which can be excavated with picks, shall be estimated and con-

sidered earth, and under the head of 'excavation' or 'embankment,' as the case may be." The August estimate was made and received by Spaulding, and payment thereon made on the 15th of September. The September estimate was also made, and payment thereunder was made on the 15th of October. The work was not completed by the 15th of said month, as stipulated in the contract. In fact, it was not completed prior to December 24, 1886, at which time Mr. Spaulding quit the work. The track had been laid, and cars run over said line of road, but all of the work stipulated to be done under said contract had not been done. No monthly or other estimates were furnished the contractor after the September estimate. The suit was not brought on the contract, but on a *quantum meruit*. The complaint alleges numerous violations of the contract, such as the failure to make monthly estimates and payments; to clear the right of way of timber, brush, and stumps as rapidly as it should have been done; to furnish grade and finishing stakes when needed; to supply the track layers with iron—all of which, it is alleged, caused great delay in the construction of said road, and made it impossible for respondent to complete said road within the time stipulated in said contract, or before the fall and winter storms set in, and which storms greatly retarded said work. It also alleges that the engineer of appellant was incompetent and unfair, and that his estimates and classifications were unjust, incorrect and unreliable. The answer denies the allegations of the complaint, and sets up a counterclaim, and demands judgment for $21,411.85. The cause was tried by the court, and judgment entered in favor of the plaintiff. This appeal is from the judgment and the order overruling the motion for a new trial. Six errors are assigned. They will be taken up and disposed of in their order:

1. The first is that the court erred in finding that the contract was as set forth in the third finding of fact. The point made is that the contract had certain specifications attached to it, which constituted an essential part of it, and were not included in said finding. The error is harmless. If the contract had been omitted from the finding of facts altogether, the case

could not be affected thereby.  This action is not brought on said contract.

2. The second error specified is as follows: "The court erred in its finding that defendant's failure to furnish relief under a November estimate was not due to the fault, negligence, or connivance of plaintiff." This finding is clearly sustained by the evidence. The evidence also shows that defendant's failure to furnish said estimates, and to make payment thereunder, resulted very disastrously to the plaintiff. The plaintiff in no manner prevented the defendant from performing the matters and things it had stipulated to do.

3. "The court erred in finding the total estimates and classifications made by plaintiff's engineers are right." We have reviewed the evidence upon the points involved in this finding, and think the finding fully sustained. The engineers who made the estimates are shown to be very competent in their line of work, and plaintiff should not be required to suffer because there was some conflict of testimony touching the ability of the engineers to make accurate estimates. If the estimates were not correct, the defendant should have shown it. If its engineers had made accurate estimates of the work done by the respondent—and it is reasonable to presume they did—it certainly was in a position to show with accuracy the amount of the various classes of material removed, the fills made, and the other work done by the appellant. Instead of putting their engineers on the witness-stand for that purpose, its main effort appears to have been directed to show that work had been done on the road after plaintiff quit the job, and, because of such work having been done, respondent's engineers could not estimate to a certainty the exact number of yards of grading done by respondent. The rule is well established that if the party possesses peculiar knowledge of evidentiary facts, which the other party claims would, if brought forward, tend to sustain his claim, and if the party so possessed fails to bring forward the facts which it is shown can be produced by him alone, a presumption arises in favor of his adversary's claim. (5 Am. & Eng. Ency. of Law, 2d ed., 41, and authorities there cited.)

534    Spaulding *v.* Coeur D'Alene Ry. etc. Co.    [Sup. Ct.

Opinion of the Court—Sullivan, C. J.

4. "The court erred in finding that the estimates and classifications made by appellant's engineers were wrong." It appears from the evidence that the estimates and classifications made by appellant's engineers were incorrect and unjust. The evidence shows that the chief engineer of appellant was partial and incompetent, was wrong in his estimates and unjust in his classifications, and was influenced and controlled by appellant's president and agents to such an extent as to make him totally unfit to act as an impartial umpire between the parties to said contract. It was stipulated in the contract that the engineer of the appellant should be the umpire to decide disputes and misunderstandings between the parties in relation to the provisions contained in the contract, and to decide the amount and quantity of work performed and material furnished, and that his decision should be binding and conclusive. Under that stipulation the company was bound to employ a competent, upright and trustworthy person as such engineer, and to see to it that he performed the services expected of him at a proper time, and in a proper manner. (*Herrick v. Railway Co.,* 27 Vt. 673; *McMahon v. Railroad Co.,* 20 N. Y. 463.)

5. "It was error to allow respondent seventy cents per cubic yard for the removal of hard-pan." The contract contained no specifications providing for a hard-pan classification, and the rate which should be allowed plaintiff for the removal of hard-pan. Shortly after the plaintiff began work under said contract, he encountered hard-pan. The evidence shows that respondent had a conversation with Mr. Corbin, the president of the corporation defendant, and Mr. Olmsted, its chief engineer, in which he told them that he was liable to strike hard-pan, and asked them if they would give a hard-pan classification, and they informed him they would do what was fair about it. Mr. Corbin testified in regard to a conversation he had with Spaulding in regard to a hard-pan classification as follows: "Spaulding spoke to me about that. I recollect it distinctly. I told him that he should have an entirely fair classification, under the contract, as to hard-pan." The witness afterward testified that he did not mean anything when he told Spaulding that he should have "an entirely fair classification under the contract, as to hard-pan." When the presi-

dent of the corporation made that statement to Spaulding, he either intended to allow a hard-pan classification, or intended to deceive Spaulding; and this court will not for a moment concede that any deception was intended, but will presume that Mr. Corbin intended to allow such classification. We think the finding of the court is sustained by the evidence. The price per yard allowed was seventy cents, which was only a fair rate for the removal thereof, as shown by the uncontradicted testimony of Spaulding, Voight and Treherne. We think the interpretation of the earth classification is that it should include boulders measuring less than one cubic foot, and loose sand rock, slate and shale, which could be excavated with picks, that it did not include material which could not be excavated with picks, and that as the hard-pan could not be so excavated, but required blasting for its removal, it did not come in the earth classification. But, however, that may be, the engineer and president of the appellant promised the respondent that he should have a fair classification thereof, and such agreement was binding on the company.

As no error has been found in the five specifications of error passed upon, the sixth and last specification, to wit, "It was error to overrule defendant's motion for a new trial," is without merit.

The persistent failure and refusal of the appellant company to perform the obligations imposed upon it by the contract are disclosed by the evidence, in this, to wit, to furnish estimates and make payments; to clear the right of way of timber, brush, logs, and stumps; to furnish finishing stakes—and in other matters set forth in the finding of facts. Such failure and refusal of the appellant company to perform its contract greatly retarded the work of the contractor, and placed him in a position, without fault on his part, to not complete the road in the time stipulated in said contract. The further fact is that the estimates of rock and earth work to be done in the construction of said road were, as made by appellant's engineer, greatly under the amount of work required to be done to complete said road. That fact alone would have some bearing on that part of the contract which requires the road to be completed by the 15th of October, 1886. The estimated cost of

said road was $35,000, and the actual cost appears to have been
not far from $100,000. That fact alone would indicate that it
actually took about three times the amount of work to complete
it that was at first estimated. The respondent having thus
been prevented by the appellant from performance on his part
within the time stipulated, he had the right to resort to the
*quantum meruit* to recover the reasonable value for the work
done. If the acts of one party to a contract be such as neces-
sarily prevent the other from performing on his part, the
party thus prevented from performing may abandon and re-
scind the contract, and recover under the *quantum meruit* rule.
(*Dubois v. Canal Co.*, 4 Wend. 285; S. C., 12 Wend. 334;
*Canal Co. v. Dubois,* 15 Wend. 87; *Merrill v. Railroad Co.,* 16
Wend. 586, 30 Am. Dec. 130, and note; 2 Parsons on Contracts,
6th ed., 222.) As we find no error in the record, the judgment of
the court below must be affirmed, and it is so ordered. Costs
of this appeal are awarded to respondent.

Quarles and Huston, JJ., concur.