## WALBRIDGE–ALDINGER CO. v. RUDD et al.

Circuit Court of Appeals, Eighth Circuit.
May 7, 1928.

No. 7941.

1. **Appeal and error ⬅1097(8)—Questions decided on appeal from interlocutory decree will not be reconsidered on appeal from final decree.**

Questions decided on appeal from an interlocutory decree will not be reconsidered on appeal from final decree, and where no new questions are presented on appeal from final decree, that were not fully considered and settled on appeal from interlocutory decree, final decree must be affirmed.

2. **Municipal corporations ⬅352—Classification of hardpan, not provided for in contract, as earth, for purpose of determining compensation for its removal, held arbitrary and unfair.**

Where contract for construction of water conduit for city did not provide for hardpan, and its presence in large quantities was a surprise to both parties, *held*, that its classification as earth, which allows contractor the lowest compensation possible for its removal, was arbitrary and unfair, in view of testimony as to difficulties encountered in removing and handling.

3. **Estoppel ⬅78(6)—Municipal contractor held estopped by his conduct from asserting right to quit because of alleged insufficient funds on hand to pay for work.**

Contractor, under contract for construction of water conduit for city, is estopped from claiming right to quit work because of alleged lack of sufficient funds on hand to pay for work, where he performed portion of work, and it was not contended that there were no funds in hand at time contract was entered into, but merely that funds were not sufficient to pay for completed job at time contractor threw up work.

Scott, District Judge, dissenting.

Appeal from the District Court of the United States for the Northern District of Oklahoma; John C. Pollock, Judge.

Action by the Walbridge-Aldinger Company against A. J. Rudd and others. Judgment for defendants, and plaintiff appeals. Modified, and, as so modified, affirmed.

Charles A. Coakley, of Tulsa, Okl., and C. B. Stuart, of Oklahoma City, Okl. (Everett Petry and E. J. Doerner, both of Tulsa, Okl., on the brief), for appellant.

J. A. Duff, of Tulsa, Okl. (H. O. Bland and S. C. Massingale, both of Tulsa, Okl., on the brief), for appellees.

Before KENYON, Circuit Judge, and SCOTT and SYMES, District Judges.

SYMES, District Judge. The appellant, plaintiff below, contracted with the city of Tulsa to excavate and lay a water conduit from what is known as Spavinaw Lake to Tulsa. The entire job was divided into 20-odd contracts, two of which, numbers 4 and 6, were awarded to appellant, and comprise the major portion of the project. The controversies that arose out of both contracts have been litigated in the same action. In the course of the work disputes arose between the city and the contractor, and, upon failure to adjust the same, the contractor abandoned the work and brought a suit in the United States District Court to enjoin the city from taking over its plant and equipment, which it had assembled on the job, and for other relief. The injunction was refused, and on appeal to this court the judgment of the lower court was affirmed. Thereafter the case was tried upon its merits before a master, who found generally against appellant, the contractor. The District Court affirmed the master's findings, and the case is now here on appeal for the second time.

Plaintiff contends in its argument and brief in this court that the master and lower court felt themselves bound to follow the construction of the contract by this court on the former appeal; that this was error, because the essential elements of the contract were not considered in the former opinion, and therefore it did not become the law of the case—and asks us to construe the whole contract and grant the plaintiff rights which it claims it lost as a result of the former opinion, found in 1 F.(2d) 187.

The contract in question is lengthy and voluminous, and refers to and incorporates detailed specifications. The points urged here are: (1) Extra foot of ditch; that is, the contractor is entitled to recover for widening the ditch one foot in excess of the dimensions required by the specifications. (2) Was the contractor entitled to extra compensation, by reason of the fact that he was compelled to do the backfilling in two operations rather than one? (3) Is the plaintiff entitled to additional pay for certain material referred to as hardpan, excavated, and claimed to have been wrongly classified? (4) Did the contractor have the right to quit work prior to completion, by reason of the alleged breach of the contract by the city; i. e., because the city lacked sufficient funds to pay for the full completion of the work?

The appellees raise a preliminary question, which, if resolved in their favor, eliminates the first two questions. It is: Is the construction placed upon the contract in question by this court on the first appeal the law of the case, and, if so, to what extent? Appellant claims that the previous decision and what was there considered is not binding, because it was an appeal from an interlocutory order, and consequently the whole case is now open for consideration de novo.

[1] Point 3, supra, to wit, alleged wrongful classification of certain material, was not involved on the first appeal. Both sides concede it is here on the merits. The rule contended for, and which is supported by the great weight of the authorities, is stated in 4 C. J. p. 1104, § 3084: "Questions decided on appeal from an interlocutory decree will not be reconsidered on appeal from the final decree, and where no new questions are presented, on appeal from a final decree, that were not fully considered and settled on appeal from an interlocutory decree, the decree must be affirmed." This rule is followed in this circuit. See Field v. Kansas City Refining Co., 9 F.(2d) 213; Brown v. Lanyon

Zinc Co., 179 F. 309; Haley v. Kilpatrick, 104 F. 647. In Field v. Kansas City Refining Co., supra, it was held that the decision on a former appeal from an interlocutory injunction order was the law of the case on appeal from the final order, where no new facts were adduced, and the submission was substantially upon the same record. The Supreme Court and other circuits hold the same. Smith v. Vulcan Iron Works, 165 U. S. 518, at page 522, 17 S. Ct. 407, 41 L. Ed. 810; Bissell Carpet-Sweeper Co. v. Goshen (C. C. A.) 72 F. 545.

The cases cited in opposition recognize the rule. For instance, in the Chase Case (C. C. A.) 261 F. 833, it is limited to those issues of law which were before the appellate court on the previous hearing, and by it determined to be the law of the case, and no other. In City of Council Bluffs v. Omaha R. R. (C. C. A.) 9 F.(2d) 246, all Judge Sanborn states is that, on appeals from preliminary injunctions, only questions necessarily raised and necessary to a decision should, for obvious reasons, be decided. In Luminous Unit Co. v. Freeman-Sweet Co. (C. C. A.) 3 F.(2d) 577, the court simply points out that the rule is not an inexorable one, and should not be applied when the law is clearly erroneous, establishes a practice contrary to the best interests of society, and works a manifest injury in the particular case.

We now inquire: What questions were raised on the former appeal, and what was there decided? In that opinion Judge Scott says that the plaintiff abandoned, on application for a temporary injunction, its third contention, to wit, the alleged wrongful classification of excavated material. That the matters material on the appeal were the alleged wrongful insertion of the word "these" in the so-called whiteprint specification, as distinguished from the original blueprint one—a question not pressed in the instant case; the contentions relative to the "extra foot" of trench excavated, and the order dividing the backfilling into two operations, instead of one—both of which were made necessary by the breaking of the pipe.

The opinion discusses the contract generally, quotes the provisions material to the above on the points and the relevant evidence, and announces definite conclusions thereon. It fully sustains the powers of the engineers to pass upon these questions, and holds that the contractor was not justified in stopping work and abandoning the contract. It would therefore seem that, unless we are of the opinion, which we are not,

that the previous decision of this court on these three points was clearly erroneous, and establishes a practice contrary to the best interests of society, or works a manifest injury in the particular case, within the rule stated in Luminous Unit Co. v. Freeman-Sweet Co., supra, we are concluded from again considering the same questions.

[2] This leaves for consideration, first, the contractor's claim for additional allowance for excavating hardpan, said to have been erroneously classified and paid for as earth. The findings of the master on this point are as follows:

"*Hardpan.*—During the progress of the work a substance called hardpan was encountered, which was very difficult and expensive to excavate. It was a hard, gritty, conglomerate of clay and sand, or small pebbles, and was not uniform in its composition. The steam shovel could only operate in it by paring or scaling it off; dynamite would not blast it, because it would not shatter, and no progress could be made in it with a pick and shovel. It was in a compact mass and did not exist in a shattered condition. It was more expensive and difficult to excavate than shale or loose rock. It varied in depth from 1 to 4 feet, and when encountered would extend upwards for 300 lineal feet in the trench. It is commonly encountered in trench excavating and road work, and had been encountered by Mr. Aldinger, president of the plaintiff company, in other work done by him. In the Spavinaw project it was in volume equal to about four times that of loose rock. The judgment of the experts who gave testimony at this hearing varied as to its proper classification. Those testifying on behalf of the plaintiff classified it for payment purposes as loose rock, although no contention was made that it was loose rock in fact. The engineers of the city classified it as earth, and allowed payment accordingly. In the opinion of said engineers, it did not require blasting for its removal."

The contract provided for unit prices, to wit: For earth, 30 cents per cubic foot; shale, $1.00 per cubic foot; loose rock, $1.00 per cubic foot, and solid rock, $3.50 per cubic foot. It was the belief of the engineers, at the time the contract was signed, that all the material found in the course of excavating the trench would fall within either one of these classifications. Due either to an oversight on the part of the engineer, or a lack of knowledge of actual conditions, hardpan was not covered by the contract. The testimony (and there is little dispute on this question) as to the consistency, hardness, and refractory nature of this material, the difficulties encountered in removing and handling it, both in excavating and backfilling, the fact that the usual methods of excavation used on the job would not handle it efficiently, demonstrates that to classify it as earth was arbitrary and unfair. The engineer, the master, and the lower court allowed the contractor the lowest compensation possible, in the face of the testimony and findings that it was more expensive and difficult to excavate than shale or loose rock, both rated at a dollar per cubic foot.

It is argued, however, that any decision of the engineer classifying material must stand, in the absence of a charge of fraud or arbitrary ruling on the part of the defendants. The contractor concedes the engineer was acting honestly and in good faith. We fail to see, however, how the contractor is bound under the circumstances presented to accept a clearly inequitable decision, and one imposing upon him a direct pecuniary hardship and loss not contemplated by the agreement. The contract assumed that no other material than that specified would be encountered, so gave the engineer specifically the right to classify all materials within one of the four classes provided for. The presence of this particular material in such large quantities was clearly a surprise to both parties. There was a total lack of agreement covering such a contingency, unless we stretch some of the very general and all-inclusive clauses to the breaking point. This we are not justified in doing.

There is testimony to the effect that material of this nature on other jobs had been classified by the city as loose rock. Mr. Holway, the city engineer, and all the experts, admitted that it was harder to handle than loose rock or shale, that steam shovels would not do it, and that it represented a very large percentage of the excavation expense. There is no more justification for giving the lowest price classification to this material, which, according to the evidence, was unusually difficult and expensive to handle, than there is for classifying it as rock, etc. The character of the material to be encountered in the work of excavation could not, of course, be determined in advance with any degree of certainty. The classification provision could have had only one object, to wit, to insure the contractor reasonable compensation, no matter what material was encountered. The specifications were prepared by the city, and the contractor had a right to assume that they adequately covered every

contingency that might reasonably occur. The contractor was thereby protected against loss, and the city from paying an excessive price. It was intended to remove the gambling element. Otherwise, the contract would have required the contractor to take all materials out of the trench at a uniform price, so that he would either make an unreasonable profit, or take an unreasonable loss. The clear intent of the parties, expressed all through this agreement, was to establish a fair relation between compensation, and expense in handling materials of whatever nature.

These views are supported in Fruin-Bambrick Const. Co. v. Ft. Smith & W. R. Co. (C. C.) 140 F. 465. There, the court was called upon to make a classification of material on facts somewhat similar to the case at bar, and said that such clauses are to be given a construction reasonable in the light of practical railroad construction, and that recovery can be had, in spite of the engineer's decision, where the same is so erroneous as to leave no doubt in the mind of the court that grave injustice was done the contractor. See also U. S. v. Cooke (D. C.) 207 F. 682, and Spaulding v. Coeur D'Alene Ry. & Nav. Co., 5 Idaho, 528, 51 P. 408, the nearest case on the facts we have been able to find.

The classification of this hardpan as earth cannot be justified on any grounds. The testimony covering the difficulty and cost of handling it entitled plaintiff to a rate of considerably more than 30 cents. The engineer either obviously favored the city, and made a classification which he knew to be wrong, or made such a gross mistake of fact as to amount to a fraud. In either event, the contractor is entitled to extra compensation, the amount of which can be easily determined by the master.

[3] Second. The only remaining question that requires consideration is: Did the contractor have a right to quit work because of the alleged lack of sufficient funds on hand to pay for the work? It is not contended that contracts 4 and 6 were void for lack of funds in hand at the time they were entered into, but merely that at the time the contractor threw up the work there were not sufficient funds to pay for the completed job. Whether this is a fact or not is immaterial. The contention is not sustained by the proof,

and the point was purely an afterthought on the part of the contractor, not made in good faith. Even if it were, he is estopped by his conduct. The authorities of Oklahoma, which we must look to, are clearly against his contention. City of Woodward v. Manhire Grate & Equipment Co., 98 Okl. 83, 224 P. 356; School Dist. No. 8 for Marshall County v. Home Lumber Co., 97 Okl. 72, 221 P. 433; City of Pawhuska v. Dahlstrom, 116 Okl. 21, 243 P. 248.

In conclusion: Appellant's exception No. 10 to the report of the master should be sustained, the lower court, or master, directed to determine and allow the contractor the fair value of the extra work therein mentioned, and modify the judgment accordingly, and, as so modified, it should be affirmed.

It is so ordered.

SCOTT, District Judge (dissenting). I regret that I am unable to concur fully with the majority in this case. My regret is the more poignant, for that I am convinced that appellant was unfortunate in entering into a hard contract, and one the performance of which would inevitably lead to a loss. Still, courts cannot make new contracts for parties who are unfortunate in such respect. I am reluctantly drawn to the conclusion that the parties to the contract adopted a binding classification, and in so doing specified solid rock, loose rock, shale, and earth. I think this classification indicates that all terrestrial substances, not to be classified as solid rock, loose rock, or shale, should be classified as earth. Earth is the broad inclusive classification, from which all others must be drawn by exception. The majority seem to be of opinion that in this so-called hardpan a new and not to be anticipated terrestrial classification was discovered during the performance of the contract, and that a court of equity should relieve the contractor from a resulting unconscionable hardship. But, as I have said, I cannot bring myself to the conclusion that this position is well founded. The contractor and its agents and engineers, I think, are presumed to have acquired general common knowledge of the territory. And it is common knowledge that this so-called hardpan exists throughout a very large portion of Oklahoma, southern Kansas, and adjoining states.