# Cahn v. The State.

*Indictment for Keeping Disorderly House.*

1. *Keeping disorderly house; sufficient indictment.*—An indictment which charges that the defendant "did keep a disorderly, public and ill governed house, and did then and there unlawfully cause and procure certain persons, as well women as men, of evil name and fame, to frequent and come together, in said house at many unlawful times, as well in the night as in the day, and did permit them there to be and remain, drinking, tippling, carousing, swearing, indecently dancing, and misbehaving themselves, to the great damage and common

nuisance and evil example of all the citizens, not only the neighborhood, but all the citizens of the county, and against the peace," &c., is good and sufficient at common law as an indictment for keeping a disorderly house.

2. *Same; sufficiency of evidence to warrant conviction.*—An indictment for keeping a disorderly house is supported, and a conviction thereunder is authorized, by proof that the defendant suffered and allowed the place to be the habitual resort of drunkards, prostitutes or other persons of ill fame, who so conducted themselves as to create disturbance and disorder to cause the place to become a nuisance to the neighborhood.

3. *Same; liability of landlord.*—Where one, while in possession of a part of a house, knowing the purposes for which it is to be used, rents the other portion of the house to persons who kept a disorderly house therein, such person may be proceeded against and punished as the keeper of the disorderly house; and the fact that the rented portion in which the disorderly conduct occurred, was separated from the part occupied by the landlord and had passed out of his control, does not relieve the landlord from liability.

4. *Same; reputation of inmates and visitors admissible in evidence.* Where on a trial under an indictment for keeping a disorderly house, it is shown that the premises wherein the disorderly conduct occurred was rented from the defendant, evidence of the bad reputation of the inmates of such premises and the visitors thereto is admissible as tending to show the character of the house and guilty knowledge on the part of the defendant.

APPEAL from the City Court of Montgomery.

Tried before the Hon. W. S. THORINGTON.

The appellant was indicted, tried and convicted under the following indictment : "The grand jury of said county charge that before the finding of this indictment, A. Cahn, whose christian name is to the grand jury unknown, did keep a disorderly, public and ill governed house, and did then and there unlawfully cause and procure certain persons, as well women as men, of evil name and fame, to frequent and come together, in his said house at many unlawful times, as well in the night as in the day, and did permit them there to be and remain, drinking, tippling, carousing, swearing, indecently dancing, and misbehaving themselves, to the great damage and common nuisance and evil example of all the citizens, not only the neighborhood, but all the citizens of the county, and against the peace and dignity of the State of Alabama."

The State introduced as a witness one George Haardt,

[Cahn v. The State.]

who testified that the defendant kept a bar-room on the corner of Dexter Avenue and Decatur street in the city of Montgomery; that the building was a two-story structure, covered by the same roof in front, but not in the rear; that the portion of the building west of the part which was used by the defendant for a bar-room, had been rented by him to women. Witness was then asked: "If he knew the character of the women who occupied these rooms?" The defendant objected to the question, the court overruled the objection, and the defendant duly excepted. The witness answered, that he did, and that their character was bad for chastity. The witness was then asked: "If he heard any loud and unusual noises, cursing, obscenity, &c. in said building occupied by said Cahn?" The witness replied that he had frequently heard loud laughing, talking, cursing and dancing in the part of the building occupied by the women, but not in the bar-room managed by the defendant. The defendant moved to exclude this answer from the jury, and duly excepted to the court's overruling his motion. There were other questions asked the witness as to the character of the women, and acts of indecency committed by them, while occupying the rooms rented to them by defendant. To each of these questions and answers the defendant separately objected, and separately excepted to the court's overruling each of the objections thereto.

The other evidence for the State substantially corroborated the testimony of the witness Haardt; and there were also witnesses introduced who testified that they lived in the neighborhood, and had heard loud talking and dancing in the building.

The evidence for the defendant tended to show that his wife rented the building and owned the business of the grocery and saloon, which was conducted therein; that she had rented out the rooms to the women who occupied them, but that he, in some instances, had acted as her agent in renting them; that neither he nor his wife knew of the character of the women at the time the rooms were rented to them; that there was no connection between the bar-room and the other portions of the house, and that in order to get to the bar-room from any room in house it was necessary to go out of doors first; and that when there had been boisterous behavior on the

[Cahn v. The State.]

part of the women, he had sometimes quieted them, and had, at other times, had them arrested by the police of the city.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charge, and separately excepted to the court's refusal to give said charge as asked : "If you believe from the evidence that there was no connection between the bar and the portions of the house occupied by the lewd women, no way of entering that bar without going out of doors and not under shelter ; and that said portion was rented out under contract to other parties, and that said rented premises had passed from under control of defendant ; and that the disorderly conduct occurred only in these portions of the premises so rented out, he must be acquitted."

No counsel marked as appearing for appellant.

WILLIAM C. FITTS, Attorney-General, for the State.— To maintain a charge of keeping a disorderly house, it is not necessary to show a disturbance of the public peace, but it is enough that the acts charged are contrary to law and subversive of public morals. On an indictment for keeping a disorderly house, it is no defense that defendant did not know the reputation of the persons who came there, or that the keeper attempted to prevent disorderly conduct.—*Price v. State*, 96 Ala. 1 ; *Hickey v. State*, 53 Ala. 514 ; *Cain v. Hopkins*, 48 Amer. Rep. 527 ; *Com. v. Cobb*, 120 Mass. 356 ; 5 Amer. & Eng. Encyc. of Law, 694.

HARALSON, J.—The indictment in this case was good at common law for keeping a disorderly house.— *Price v. The State*, 96 Ala. 1; *Sparks v. State*, 59 Ala. 86.

To support an indictment of the kind, it is sufficient to prove that the defendant suffered and allowed the place to be the habitual resort of drunkards, prostitutes and such people as are mentioned in the indictment, creating the disturbance and disorder therein alleged.

A person who rents a house knowing the purposes for which it is to be used, and which is kept as a disorderly house with his knowledge, may be proceeded against and punished as the keeper of it, (5 Amer. & Eng. Encyc. of

Law and notes, p. 699) ; and the evil repute of those renting and the visitors is admissible to show guilty knowledge.—*Price's Case, supra; Com. v. Cobb,* 120 Mass. 356 ; 10 Cr. L. Mag. 520.

The objections to the evidence introduced by the State were general, and for these reasons, if not for better ones, were properly overruled, The evidence seems to have been legal, for the purpose of showing the character of the house.—*Com. v. Kimball,* 7 Gray, 328 ; *Sparks' Case, supra.*

. The charge requested by defendant was properly refused. It was calculated to confuse and mislead. The two apartments of the house may have been separate, to the extent of not entering the one from the other without going out of doors and not under shelter, and may have passed out of control of defendant into the custody and control of other persons, for all proper purposes, and the disorderly conduct may have occurred only in the portions of the premises so rented out, and yet defendant, if he knowingly permitted such disorder to go on as charged, might be guilty notwithstanding. A renter cannot shield himself behind such excuses, if he had knowledge of the illegal and disorderly purposes for which it was used.— Authorities *supra; Campbell v. The State,* 55 Ala. 93.

Affirmed.

