# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

Thoenebe et al., Appellants, *v.* Mosby et al.

*Equity—Injunction—Dancing—Character of neighborhood.*

A bill in equity to enjoin dancing in a hall in a neighborhood which was not strictly residential but partly given over to business, was properly dismissed where it appeared that the persons who attended the dances were respectable people and conducted themselves in an orderly manner, and made no more noise than is usual on such occasions, and where it further appeared, that though the guests, after the dancing was over made considerable noise in the street by bidding good-bye to one another thereby disturbing the repose of persons in the immediate neighborhood, such matters could be satisfactorily controlled by the police.

Argued Jan. 24, 1917. Appeal, No. 334, Jan. T., 1916, by plaintiffs, from decree of C. P. No. 1, Philadelphia Co., Dec. T., 1915, No. 1671, dismissing bill in equity for an injunction in case of W. Herman Thoenebe, John A. Gill and Arthur F. Schneider v. Jerome Mosby and John Foreman, trading as Mosby and Foreman, and Joseph M. Thomas, trading as Charles J. Thomas Sons. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction.

The facts appear in the following opinion by BREGY, P. J.:

This is a bill alleging that the defendants are main-

taining a nuisance at the hall, 1512 to 1520 North Thirteenth street.

1st. The plaintiffs reside on Thirteenth street between Jefferson and Oxford streets.

2d. The defendants, Mosby and Foreman, are lessees of a hall on Thirteenth street between Jefferson and Oxford streets, where they have a dancing school. The defendant Thomas is the owner of the building.

3d. On Monday, Thursday and Saturday nights Mosby and Foreman, who rent the hall on the third floor of the stable building known as Thomas' stable, have dancing parties that begin at nine o'clock and continue till twelve o'clock. On Wednesday night they teach dancing from 8:30 o'clock to 10:45 o'clock. On Tuesday and Friday nights the hall is not occupied by the dancing school in any way, but the lessees sublet it (with the consent of the owner, Mr. Thomas) for concerts, balls, and so on as they can obtain a tenant. During the fifteen months the defendants have occupied the hall they have rented it for the above purposes fourteen times.

4th. On Monday, Thursday and Saturday nights, the music for the dancing parties begins at 9 o'clock and continues till 11:50, when it stops and the patrons leave— the hall being emptied by 12 o'clock. On Wednesday night, the teaching night, the school begins at 8:30 and closes at 10:45. On the occasions that the hall has been rented out for different entertainments, they have occupied the hall till 2 o'clock a. m.

5th. The music at the dancing parties consists of five pieces, viz: Piano, violin, cornet, trombone and trap drum. On Wednesday nights the music is by the piano only. The same five pieces play at the balls or entertainments when the place is rented.

6th. When the music continues after 11 o'clock it is muffled to subdue its noise, and so continues till the audience leaves.

7th. The hall here alluded to is on the third floor of a large public stable building that has been so occupied

for over forty years. During the many years of the existence of this stable it has been occupied as such, both for the stabling of private teams and the hiring of horses and carriages to the public. The hall on the third floor has for over thirty years been rented out as a dancing school, for parties, concerts and for different kinds of public meetings, political and otherwise.

8th. The neighborhood is no longer a strictly residential one. This one square on Thirteenth street between Jefferson and Oxford has in addition to the large stable already mentioned quite a number of business places. From the north side of Jefferson street to the south side of Oxford street, there is on one side a large furniture manufactory, a barber shop, a store, a tailor shop, a china decorating store and an empty store at the corner; on the other side there is a saloon, tailor shop, a wall paper establishment, a butcher shop and other stores. On the south side of Jefferson street at Thirteenth street there is a grocery store at one corner and a drug store at the other; and on the north side of Oxford, a grocery store at one corner and an insurance office at the other.

9th. The persons attending the dances and entertainments heretofore spoken of have behaved themselves in a proper way in the hall, and no misbehavior there has been proved or, in fact, alleged against them.

10th. The patrons of the hall are colored people.

11th. When the audience disperses there is on the street the noises of these persons talking to each other, saying good-bye and the calling to a friend to wait, etc., etc.

12th. At the dancing parties the attendance is from eighty to one hundred; at the times the hall is rented sometimes there are as many as four hundred there.

13th. The occupants of four houses on Thirteenth street complain that they are annoyed by the music in the hall and by the noise in the street when the patrons

leave. Very many more say they are not annoyed and have no complaint to make.

14th. Within the last few years the immediate neighborhood but not this street has become tenanted by a large number of colored people.

### CONCLUSIONS OF LAW.

The plaintiffs seek to have the defendants close the hall at about 10 o'clock, complaining that the continuation of the music after that hour and the dispersal of the audience and its attendant noise are a nuisance that annoys them.

The complaint raises the question as to what hour a dancing school, party, concert or ball should close its doors. The answer must depend upon the neighborhood, and the facts of each particular case, as there can be no general rule on the subject.

Considering the fact that I have found this not to be a strictly residential neighborhood, but one that has changed into a partly business one, I do not consider it unreasonable to keep open the dancing school till 12 o'clock. The hours of entertainment are not what they used to be. Everything is later, and, as times change, we must change our habits with them. Everything has been done by the proprietors of the school to lessen the sound of the music after 11 o'clock, and I see no reason to interfere with the dancing school.

As to the parties or balls that are held on other evenings, while not very many in number, another question presents itself. Considering the neighborhood and the admitted fact that on an average of once a month an entertainment of some kind is given which continues till two o'clock in the morning, is it proper to issue an injunction?

This question is not without difficulty. That it is an annoyance to the plaintiffs to have their sleep broken by

these gatherings is undoubtedly true. Those who live in cities must take what goes with it, however. Those who live in business neighborhoods cannot expect or demand the quiet of the suburbs.

As the neighborhood changes they must take the consequences. If it changes for the worse and personal discomfort follows, that must be submitted to. The running of street cars and the noise of the automobiles all night long are among the few annoyances that all sections of the city are now subjected to, but would some years ago have been considered a nuisance.

Applying the principle that an injunction should not issue in doubtful cases, I would not issue one here.

There remains only the other question, viz: Can the bill prevail because of the noise in the street after the entertainments are dismissed?

As I have found that the defendants' entertainments bring together an assemblage of respectable, well-behaved people, and that the noises in the street are not of a kind that are induced by or encouraged by the defendants' parties, I see no reason for a Court of Equity to act. This is a matter for the police to see to. We would not hesitate to enjoin the gathering of disorderly, dissolute, drunken or depraved persons, whose coming together must necessarily annoy the residents of nearby houses, but the saying of parting words by respectable people and the calling to friends as they leave the hall, is a matter for the police to regulate, rather than for a court to dispose of by injunction.

The court dismissed the bill. Plaintiffs appealed.

*Error assigned,* inter alia, was the decree of the court.

*Ormond Rambo,* with him *Frank H. Warner,* for appellants.

*J. H. Shoemaker,* for appellees.

PER CURIAM, February 26, 1917:

This bill was filed to enjoin dancing and music in a certain hall in the City of Philadelphia.. That it was properly dismissed appears from the facts found and legal conclusions reached by the learned president judge of the court below, and, on them, the decree is affirmed at the costs of appellants.