## BIELECKI et al. v. CITY OF PORT ARTHUR et al. (No. 1633.)

Court of Civil Appeals of Texas. Beaumont. Jan. 20, 1928.

Rehearing Denied Feb. 1, 1928.

1. **Municipal corporations** ⟜57—Municipality can exercise no power not clearly delegated or necessarily implied by charter, and ordinance not warranted thereby is void.

Municipal corporation can exercise no power not clearly delegated by charter or arising by necessary implication out of some delegated power, and ordinance not warranted by charter is void, and furnishes no justification to persons acting under it.

2. **Licenses** ⟜7(1)—Municipal corporations ⟜598, 623(1)—Charter provisions, authorizing license and regulation of dance halls, abatement of nuisances, and punishment of authors, held valid under police power (Charter of City of Port Arthur).

Charter of city of Port Arthur, authorizing city to license, tax, regulate, forbid, suppress, and close dance halls, and to define nuisances, abate them by summary proceedings, and punish authors thereof, *held* valid under police power in furtherance of public welfare.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. **Municipal corporations ⬳605—Legislative charter cannot authorize city to declare that a nuisance which is not such in fact, Legislature having no power to do so.**

Provisions of charter granted by Legislature authorizing city to abate nuisances and punish authors thereof cannot authorize city to declare that a nuisance which is not so per se or at common law, since Legislature itself cannot declare that a nuisance which is not so in fact.

4. **Municipal corporations ⬳605—Charter conferred on city all power to define and abate nuisances possessed by Legislature itself, and provision respecting dance halls does not broaden authority (Charter of City of Port Arthur).**

Charter of city of Port Arthur, authorizing city to license, tax, regulate, forbid, prevent, suppress and close dance halls, and to define nuisances, abate them by summary proceedings, and punish authors, conferred on city all powers to define and abate nuisances possessed by Legislature itself, and specific provision as to dance halls does not broaden authority conferred.

5. **Nuisance ⬳61—Dance hall is not "nuisance," but operation of dance hall within residence district of city is nuisance per se, regardless of manner of operation.**

Dance hall itself is not a "nuisance," but operation of public dance hall within residence district of city is intrinsically and inevitably a nuisance per se, regardless of manner of operation, since it cannot be operated so as to obviate objectionable features.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

6. **Municipal corporations ⬳605—Determination by municipality under charter that dance halls in residence districts were nuisances held conclusive, in absence of abuse of discretion or discrimination between occupations (Charter of City of Port Arthur.)**

Determination by city of Port Arthur, under charter of Port Arthur, that dance halls located in residence districts were nuisances, and should be prohibited, held conclusive on courts, in absence of abuse of discretion or discrimination between lawful trades and occupations.

7. **Constitutional law ⬳70(3)—Courts cannot inquire into motives in enacting ordinance, but ordinance may be impeached for fraud.**

While generally courts have no jurisdiction to inquire by any character of testimony into motives of city council or members thereof in enacting ordinance, ordinance may be impeached for fraud.

8. **Municipal corporations ⬳605—Facts respecting enactment of ordinance prohibiting dance halls in residence districts and authorizing abatement held not to raise issue of fraud.**

Facts that ordinance forbidding public dance halls in residence districts when first presented forbid such dance halls within 300 feet of private residences, and that this distance was later reduced, and that only one dance hall was affected by ordinance, held not to raise issue of fraud.

9. **Municipal corporations ⬳605—Ordinance in general terms forbidding dance halls in residence districts, and authorizing abatement as nuisances, held not void because affecting only one dance hall when enacted.**

Ordinance couched in general terms, forbidding dance halls in residence districts, and authorizing abatement thereof as nuisances, held not void because of fact that it affected only one dance hall at time of enactment.

10. **Constitutional law ⬳251—Unlawful classification by ordinance denies due process.**

Unlawful classification by municipal ordinance denies due process of law.

11. **Municipal corporations ⬳626—Municipality can make reasonable classification of persons and things in defining nuisance under charter (Charter of City of Port Arthur).**

City of Port Arthur can make reasonable classification of persons and things in defining nuisance under charter of Port Arthur.

12. **Constitutional law ⬳208(1)—Classification is valid, if there is reasonable ground, and law operates equally within same class.**

Classification made by law is valid, if there is reasonable ground for classification, and law operates equally within same class.

13. **Municipal corporations ⬳626—Ordinance forbidding dance halls in residence districts, and authorizing abatement as nuisances, held not to make unlawful classification (Charter of City of Port Arthur).**

Municipal ordinance forbidding public dance halls in residence districts, and authorizing abatement thereof as nuisances, enacted under charter of city of Port Arthur, held not to make unlawful classification as against churches.

14. **Municipal corporations ⬳605—Ordinance forbidding dance halls in residence districts, and authorizing abatement as nuisances, held not void because Legislature had not defined such dance halls as nuisances (Charter of City of Port Arthur).**

Municipal ordinance, forbidding dance halls in residence districts within 150 feet of private residences, and authorizing abatement thereof as nuisances held not void because Legislature had not defined such dance halls as nuisance by general law, since Legislature could make such classification, and could delegate that authority to municipal corporation by charter of city of Port Arthur.

15. **Constitutional law ⬳101—Ordinance forbidding dance halls in residence districts, and authorizing abatement as nuisances, held not void as to one who built dance hall under permit, and operated it as such.**

Municipal ordinance forbidding dance halls in residence districts, and authorizing abatement thereof as nuisances, held not invalid as to one who built dance hall under permit from city for express purpose of operating dance hall, and in fact operated it as such for three years be-

fore enactment of ordinance, since one cannot acquire vested right to operate nuisance.

**16. Constitutional law ⟨⟩92—One cannot acquire vested right to operate nuisance.**

It is general rule that one cannot acquire a vested right to operate a nuisance.

**17. Constitutional law ⟨⟩81—Dance halls are subject to regulation under police power.**

Public dance halls are subject to regulation under police power of state in interest of public morals.

**18. Injunction ⟨⟩105(2)—Injunction is available to one threatened with prosecutions to avoid multiplicity of suits, when prosecutions are based on validity of ordinance, and enforcement would invade legitimate property rights.**

While, generally, injunctions will not lie to restrain criminal proceedings, relief by injunction is available to one threatened with criminal prosecutions in order to prevent multiplicity of suits when prosecutions are based on validity of city odrinance, and enforcement thereof would invade legitimate property rights.

**19. Municipal corporations ⟨⟩605—Provisions of ordinance attempting to delegate power to police officers to summarily abate dance halls as nuisances held void.**

Provisions of municipal ordinance attempting to delegate power to chief of police and police officers to summarily abate public dance halls in residence districts as nuisances *held* void.

**20. Nuisance ⟨⟩61—Building and equipment for dance hall is not nuisance per se.**

Building and equipment for operation of public dance hall is not nuisance per se, even though operation is nuisance.

**21. Eminent domain ⟨⟩69—Property in dance hall and equipment, operation of which was nuisance, could be taken for public use only on award of competent authority and compensation.**

Property in public dance hall and equipment, operation of which was nuisance, could be taken or demolished for public use only on award of competent authority and payment of compensation.

**22. Injunction ⟨⟩85(1)—Refusal of injunction to restrain summary abatement of dance hall and equipment under void provisions of ordinance will be sustained, where danger is not imminent, and can become so only after other steps.**

Refusal of injunction to restrain summary abatement of public dance hall in residence district and equipment as nuisance under void provisions of ordinance will be sustained by Court of Civil Appeals, where danger to property is not imminent, and cannot become so until other steps have been taken.

**23. Injunction ⟨⟩12—Plaintiff held not entitled to injunction on general ground that he was threatened with prosecutions for violation of ordinance.**

Plaintiff *held* not entitled to issuance of injunction on general ground that he was threat-

ened with criminal prosecutions for violation of municipal ordinance.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit by Stanislow Bielecki and another against the City of Port Arthur and others. From a judgment in favor of defendants, plaintiffs appeal. Affirmed on conditions.

Howth, Adams & Hart, of Beaumont, for appellants.

J. W. O'Neal, of Port Arthur, for appellees.

WALKER, J. The city of Port Arthur operates under a special charter authorizing it in specific terms to "license, tax and regulate, or forbid and prevent, dancé houses * * * and suppress and close same, whenever the preservation of order, tranquillity, public safety or good morals may demand, or when necessary, expedient or advisable." In general terms it authorizes the city "to define what shall be nuisances in the city, * * * and abate such nuisances by summary proceedings, and to punish the authors thereof by penalties, fines, and imprisonment." Under authority of its charter, the city of Port Arthur passed an ordinance defining public dance halls operated in residence districts as nuisances, and further providing:

"By dance hall as used in this ordinance is meant any structure * * * wherein dances are given to which the public are privileged to attend, or for which a fee for admission or participation is demanded or received. And by maintaining same in a residence neighborhood is meant that such public dancé hall is located in a block where the majority of the houses are actually used for resident purposes, or that such dance hall is located within 150 feet of the private residence or residences actually occupied by private families."

Punishment was provided for the violation of the ordinance, and the police department was given power of summary abatement. At the time this ordinance was passed, for three or four years prior thereto, Stanislow Bielecki, referred to herein as appellant, owned and operated a public dance hall within the corporate limits of the city of Port Arthur, which was a nuisance under the terms of this ordinance. After the passage of the ordinance, the police department of the city notified him that he would be punished under the ordinance and his business closed by the police department if he did not cease to operate. Thereupon he presented to the judge of the Sixtieth judicial district of this county his petition praying for an injunction restraining the city of Port Arthur and its police department from enforcing, or attempting to enforce, this ordinance, and from interfering with his business, and from filing criminal charges against him. He alleged that the ordinance was void on the following grounds:

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(a) The ordinance, while in general terms, was directed specifically against his business alone, and was intended to suppress his business, leaving the other dance halls unmolested; (b) that, while general in its terms, it, in fact, was specific, in that it applied only to his dance hall; (c) in arbitrarily declaring dance halls nuisances whether they were so in fact or not, it was void, in that it provided no rule or criterion by which to determine the character of dance halls, but arbitrarily made them nuisances when operated in any residence district within 150 feet of a private residence; (d) it did not leave to the courts the issue of nuisances vel non, but arbitrarily made the operation of a public dance hall a nuisance, whether so in fact or not; (e) it unlawfully discriminated against him personally, and also against his business; (f) it violated both the federal and state Constitutions, in that its enforcement would deprive him of his property without due process of law; (g) the enforcement of this void ordinance would result in the filing against him of a multiplicity of. suits and prosecutions, and the destruction of his business and property.

The temporary injunction was issued as prayed for, but upon trial on the merits was dissolved and a permanent injunction refused. The case is before us on assignments and propositions against that judgment, by which appellant brings forward the same contentions advanced in his petition.

On the facts, it was shown that appellant's dance hall was situated within the residence district of the city of Port Arthur, as that term was defined by the ordinance. It was conceded that the operation of the dance hall would constitute a violation of the ordinance. Appellant had operated his dance hall for three or four years prior to the adoption of the ordinance in a manner highly displeasing to the neighborhood where it was situated. To remedy this condition, he employed and paid personally two policemen to assist him in maintaining order, and had been doing this for about two months before the ordinance became effective, and before he was threatened with criminal prosecution and the destruction of his business under the terms of the ordinance. He had an average attendance of about 150 on his dances, which he gave three times per week and from which he netted about $250 per month. About 50 per cent. of his patrons attended in automobiles, and the balance walked. The patrons would begin to arrive about 8 p. m. and the dances closed about 11 p. m. During this time automobiles were constantly arriving and departing. While their owners were attending the dances, the automobiles were parked along the street adjacent to the dance hall. Much noise was made in starting and stopping the automobiles, and their glaring lights were an annoyance to the neighborhood. The guests greeted each other on their arrival and departure, and there was much loud laughing and talking on the outside of the dance hall. Music was made by a band of three pieces that could be heard two or three block from the dance hall. There was some fighting and drinking, some lewdness, and much noise during the progress of the dances. Since appellant does not controvert the testimony of the chief of police, W. W. Covington, though calling him "a highly prejudiced witness," we quote from his testimony as follows:

"That dance hall has been there ever since I have been chief of police. * * * That place has been a source of worry to me ever since I have been chief of police. I have had a great deal of trouble with that place. I have had a great many complaints about that place. * * * There is more or less a general disturbance down there every night they have a dance down there. * * * They gave a great deal of trouble by fighting, cursing, drinking, and different things. There is just a general complaint of all kinds, parking cars on the outside, people getting in them, loving up, etc. * * * Mr. Bielecki pays these two policemen for their services down there to keep order around that place, but they haven't been able to keep order. It would take a whole bunch of officers to corral that bunch down there. Mr. Champaigne and Mr. Cotham have kept as good order down there as they could, but they haven't been able to keep order by any means. I get a complaint about the place every time they have a dance down there, even though those two officers are there. I have been having these complaints ever since that place has been operated down there. I have attended to these complaints the best I could. * * * We have complaints about the language they use down there. We have also had complaints about the noise," etc.

Mr. Cotham, one of the appellant's special policemen, testified:

"I live in Port Arthur. * * * I have been a police officer down there for about three years. I have had occasion to be down there at the Waco Park Dance Hall (appellant's dance hall) quite a bit during the last few months. I have been down there on the average of three times a week for about three months.

"Q. Do you think, Mr. Cotham, from your observation and experience, whether or not the dance hall, during the time you have been around there, has been a disturbance to the neighborhood? A. It is just like any dance I have been around. They all have their troubles. Some nights they did not have and and other nights they did. * * * Sometimes when the boys go to leave they would get on the street about half a block from the place and they would holler back at the others, something like that. * * * We keep order and peace down there the best we can. Sometimes they will have a fight, and sometimes they won't. * * * If there had been any indecent or vulgar dancing going on on the inside of the hall, and the floor man would come and tell me, I would go in and stop them, and put them off the floor and out of the dance hall. That is part of the duties down there. They have a floor man down there also to see that they dance decently."

The other special policeman was introduced by appellant. He testified:

"Whenever I find anybody drunk down there I either send them to jail or put them out and send them away. If I find anybody down there that is dancing indecent or immorally I catch them and put them out of doors. During the time that I have been down there we have had occasion to arrest a few. * * * Nobody has permission to go out to the cars and stay while the dance is going on. We look around the cars and try to keep them out of cars the best we can. * * * If we see any vulgar dancing we stop it, and put them out. If a drunk fellow comes in, we put him out or send him to jail.

"Q. Now, take it altogether since you have been there, I will ask you if the place has been conducted in a decent and orderly manner? A. I have been around public dance halls before, and to my knowledge I would have to say, 'Yes; it has.' * * * Dance halls that are located in a residence neighborhood are a source of disturbance to the neighbors. * * * They are very noisy. * * * They are a source of disturbance to the neighborhood where they are located. * * * Around a dance hall there is going to be some noise all the time. * . * * Whenever they get in their cars to leave somebody will holler to somebody else in another car, and they will laugh and talk back and forth, and, of course, all of them make a noise. *. * * * The crowd laughing and talking and cars starting and stopping and so on, it is almost impossible to keep things perfectly quiet."

## Opinion.

[1-4] A general discussion will dispose of appellant's propositions. It is well settled that a municipal corporation can exercise no power not clearly delegated by its charter or arising by necessary implication out of some delegated power, and that an ordinance not warranted by its charter is void and can furnish no justification to persons acting under its authority. Miller v. Burch, 32 Tex. 208, 5 Am. Rep. 242. The charter of the city of Port Arthur, being an act of the Legislature, is valid with respect to the powers granted to it to the extent of legislative authority to grant such powers. This delegation of power, both in its specific terms as it relates to dance halls and in its general terms authorizing the city to define and abate nuisances, has its foundation and support in the police power of the state, "always available in furtherance of the general public welfare." Town of Linden v. Fischer, 154 Minn. 354, 191 N. W. 901. The power to abate nuisances and punish the authors may therefore be conferred by the Legislature upon incorporated cities. Pye v. Peterson, 45 Tex. 312, 23 Am. Rep. 608. Ex Parte Robinson, 30 Tex. App. 493, 17 S. W. 1057. But such powers, whether conferred in general or specific terms, cannot authorize a city to declare that a nuisance which is not so per se or at common law, and this for the reason that the Legislature itself cannot declare that a nuisance which is not so in fact. Crossman v. City of Galveston, 112 Tex. 303,

.247 S. W. 810, 26 A. L. R. 1210. Therefore, though the charter before us contained specific authority in relation to dance halls, it does not broaden the scope of the authority delegated by the general provisions relating to nuisances as they affect the question before us. Having inherently the power to define and abate nuisances and to delegate that power to the municipal corporations of the state, the legislative charter to the city of Port Arthur is sufficiently comprehensive in its terms to confer upon the city all the power possessed in this respect by the Legislature itself. Since, under the Crossman Case, supra, this power is limited under the due process of law provision of the state and federal Constitutions by the intrinsic character of the thing to be suppressed, it becomes necessary to search out the intrinsic and inevitable characteristics of public dance halls as they have been judicially defined.

[5] Dance halls, as such, have not been prolific of litigation. The decisions seem to be that in itself a dance hall is not a nuisance, but can acquire that character from the locality in which it is operated. Thus, in Village of Des Plaines v. Poyer, 123 Ill. 348, 14 N. E. 677, 5 Am. St. Rep. 524, it was said that a public dance was not necessarily a nuisance. In Thoenebe v. Mosby, 257 Pa. 1, 101 A. 98, it was held that a dance hall located in a neighborhood not strictly residential was not a nuisance. But in Com. v. Cincinnati, etc., 139 Ky. 429, 112 S. W. 613, 18 L. R. A. (N. S.) 699, Ann. Cas. 1912B, 427, it was held that a dance hall may become a nuisance if not conducted with proper decorum. The court said:

"While it is true that dancing is frequently an innocent amusement, and drinking may be engaged in without becoming a nuisance, yet if the dancing and drinking are accompanied by swearing, and being drunk, making loud noises, and otherwise misbehaving, there can be no doubt that such acts will constitute a nuisance."

Circumstances making dance halls nuisances have been discussed in the following cases taken from 19 A. L. R. 1443; Cahm v. State (1895) 110 Ala. 56, 20 So. 380; Beard v. State (1889) 71 Md. 275, 17 A. 1044, 4 L. R. A. 675, 17 Am. St. Rep. 536; 8 Am. Crim. Rep. 173; Com. v. Cardoze (1875) 119 Mass. 210; Brown v. State (1877) 2 Tex. App. 189; Callaghan v. State (1896) 36 Tex. Cr. R. 536, 38 S. W. 188. Illustrating the judicial trend, we quote as follows from Feeney v. Bartoldo (N. J. Ch.) 30 A. 1101:

"That the defendant has a right to the ordinary and proper use of a piano in his saloon, and that his customers have a right to dance to the music as expressed by such instrument, there can be no doubt. There is no distinction between citizens in this respect. Every citizen is permitted to possess himself of the instrument, and also to enjoy a dance. But it is equally well settled that every citizen, in the exercise of his individual rights in the use of his property, is limited to such use as will

not interfere with the reasonable rights of others in the enjoyment of their property."

In Phelps v. Winch, 309 Ill. 158, 140 N. E. 847, 28 A. L. R. 1169, it was said:

"The music, which was suited to dances of the present period, laughter, applause, making announcements, shuffling of feet, the noises and confusion when the dance breaks up, such as calling back and forth, starting cars, blowing horns, closing shutters, can be distinctly heard in complainants' houses, and bright lights of the cars flash across them as they are leaving or getting ready to leave the neighborhood of the pavilion, and that the noises interfere with the ordinary conversations in complainants' houses and disturb them in their use, prevent rest and sleep, and make their homes much less desirable."

We give the further extended quotation from that case:

"In First Methodist Episcopal Church v. Cape May Grain & Coal Co., 73 N. J. Eq. 257, 67 A. 613, the court said: 'While defendant is entitled to the enjoyment of its property in the pursuit of a lawful business, that business must be conducted with due regard to the well-recognized rights of surrounding property owners. When such business becomes creative of conditions which clearly render the appropriate enjoyment of surrounding properties impossible, the rights of others are invaded, and equity will restrain the persistent pursuit of such injuries. * * * The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or overrefined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity.'

"Gilbough v. West Side Amusement Co., 64 N. J. Eq. 27, 53 A. 289, involved the application for an injunction to restrain the making of a noise which it was alleged rendered complainant's dwelling at times uncomfortable to an unlawful degree. The court said: 'That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventive remedy of the court of equity is thoroughly established. The reason why a certain amount of noise is or may be a nuisance is that it is not only disagreeable, but it also wears upon the nervous system, and produces that feeling which we call "tired." That the subjection of a human being to a continued hearing of loud noises tends to shorten life is, I think, beyond all doubt. Another reason is that mankind needs rest and sleep, and noise tends to prevent both.'

"It seems unnecessary to multiply authorities. The facts found by the master and approved by the chancellor in his decree clearly showed that, the operation of the pavilion by defendants in the manner in which it was operated seriously injured complainants' premises as places of residence, deprived complainants of reasonable comfort and the rest they had a lawful right to enjoy, and rendered their homes much less desirable and comfortable. It makes no difference that the proof showed that the pavilion was orderly and well regulated as a place of amusement. The noises which were caused by so using the pavilion were so nearly continuous and of such a character as to seriously affect the comfort of any normal person situated as the complainants were. In addition to the noises in the pavilion, it caused the congregation on and adjacent to the premises of a large number of automobiles—from 50 to 100 an evening. It could not be otherwise than that the noise and confusion of starting and getting that number of cars out, so near complainants' residences, at 11 or 12 o'clock at night, would greatly disturb people in the near vicinity. While defendants' business was not unlawful, it was not of so useful a character as would justify the denying of the relief prayed."

In State v. Grosofski, 89 Minn. 343, 94 N. W. 1077, the Supreme Court of Minnesota said:

"The term 'disorderly house,' as defined by the common law, is one of very wide meaning, and includes any house or place, the inmates of which behaved so badly as to make it a nuisance, such as * * * dancing houses, or other like places."

On the foregoing authorities, it appears that the manner in which appellant operated his dance hall was not an exception. In fact one of his special policemen testified that it was "just like any dance that I have been around." The noise from the automobiles and their flashing lights, the greeting of friends in arriving and departing, the laughter and goodnights, the loud talking, the music and dancing and their attending noises, the occasional drinking and fighting and loud dancing, are the constituent and inevitable essentials of a public dance hall, without which they do not, and, excepting the drinking, fighting, and lewdness, could not, exist. From these facts it follows, under the authorities cited, that the operation of a public dance hall within the residence districts of a city is per se a nuisance; that is, a public dance hall operated within a residence district is intrinsically and inevitably a nuisance. This does not follow from the manner of its operation, permitting a redress by the regulation of the manner of its operation, because it cannot be operated in a residence district so as to obviate the objectionable features. Therefore the failure to embody in an ordinance declaring public dance halls operated in residence districts to be nuisances a rule or criterion by which to determine whether or not they are in fact nuisances does not render the ordinance void.

[6] Whether or not a public dance hall operated in a residence district in violation of this ordinance constitutes a nuisance does not raise a justiciable question. The grant of power by the Legislature to the city of Port Arthur to define and abate nuisances and to punish their authors being constitutional;

and the operation of a public dance hall in a residence district being hurtful to the health and peace of the neighborhood and prejudicial to the best interests of the public, that is, being intrinsically and inevitably a nuisance, the determination by the city of Port Arthur under its charter provision that they are nuisances, and should be prohibited, is 'a proper exercise of the legislative discretion conferred upon it, and such determination must be acknowledged by the courts as binding and conclusive, in the absence of abuse of discretion or discrimination between lawful trades and occupations. 2 Dill. Mun. Corp. (5th Ed.) § 690, p. 1040.

[7, 8] Appellant's propositions attacking this ordinance on the ground that the city abused its discretion and discriminated against him in enacting it are not sound. There is no evidence that the ordinance was willfully framed so as to affect only his dance hall, leaving the others free to operate. While it is a general rule of law that courts do not have jurisdiction to inquire by any character of testimony into the motives of the city council, or any member or members thereof in enacting an ordinance (Atchison v. Hanna, 107 Tex. 64, 174 S. W. 279), the Supreme Court of Missouri, in Glasgow v. City of St. Louis, 107 Mo. 198, 17 S. W. 743, on authority of Dill. Mun. Corp. (4th Ed.) § 31, recognized that a city ordinance might be impeached for fraud. It is not necessary for us to discuss that exception in relation to this ordinance, for the facts do not invoke it. The evidence goes only to the extent that, when first presented, the ordinance made the distance 300 feet, then, upon protest, it was reduced to 200 feet, and, upon further protest, to 150 feet. There was no suggestion that the councilmen were through improper motives seeking the destruction of appellant's business. That his hall happened to be the only public dance hall prohibited was a mere incident in its operation, and does not raise the issue of fraud.

[9] That the ordinance at the time of its operation applied only to appellant's dance hall does not render it void. It was in general terms, and the issue was not raised that it was put in general terms merely to evade the Constitution. The ordinance, being in general terms, applied not only to appellant, but to any and all other persons who in the future may violate its provisions. O'Brien v. Amerman, 112 Tex. 254, 247 S. W. 270; People v. Hazelwood, 116 Ill. 319, 6 N. E. 486.

[10-13] It is equally clear that the classification of appellant's business was not an unlawful discrimination. Citing the Waggoner Case, 116 Tex. 187, 288 S. W. 129, he says his public dance hall stands in the same category with a church. The intrinsic elements of a church and a public dance hall are so essentially different that his proposition can have no application. Of course, an unlawful classification is in violation of due process of law. But under its grant of power the city of Port Arthur can make reasonable classification of persons and things in defining a nuisance, and such a classification will be respected and enforced by the courts. Middleton v. Texas Power Co. (Tex. Civ. App.) 178 S. W. 956; Needham v. State, 51 Tex. Cr. R. 248, 103 S. W. 857. "If there is a reasonable ground for the classification, and the law operates equally within the same class, it is valid." 12 C. J. 1129; Nash Hdw. Co. v. Morris, 105 Tex. 217, 146 S. W. 874. That a reasonable ground exists for the classification of public dance halls as nuisances and restraining their operation in a residence district as against churches is openly manifest.

[14] That the Legislature has not by a general law defined a public dance hall operated within 150 feet of a private residence to be a nuisance does not render this ordinance void. The Legislature could make that classification, and therefore can delegate that authority to the municipal corporations of the state.

[15-17] That appellant built his dance hall under a permit from the city of Port Arthur, and built it for the express purpose of operating a public dance hall, and in fact operated it as such for three years prior to the enactment of the ordinance, does not take him out of its provisions nor render it void in its application to him and to his business. One cannot acquire a vested right to operate a nuisance. At all times appellant's business was subject to the police power of the state. "That public dance halls * * * are subject to regulation, etc., under that power and in the interest of public morals, there can be no serious question." Town of Linden v. Fisher, supra.

[18] Though it is a general law that an injunction will not be granted to restrain criminal proceedings, which proposition appellee advances in bar of appellant's cause of action, on the following authorities: City of Tyler v. Story, 44 Tex. Civ. App. 250, 97 S. W. 856; Dibrell v. City of Coleman (Tex. Civ. App.) 172 S. W. 550; City of Austin v. Austin's Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; City of Dallas v. Cluck & Murphy (Tex. Civ. App.) 234 S. W. 582; City of Graham v. Seal (Tex. Civ. App.) 235 S. W. 668; Supreme Lodge v. Johnson, 98 Tex. 1, 81 S. W. 18; City of Breckenridge v. McMullen (Tex. Civ. App.) 258 S. W. 1099, yet there are well-established exceptions to that rule, one of which is that relief by injunction is available to one threatened with criminal prosecutions in order to avoid a multiplicity of suits when such prosecutions are based upon the validity of a city ordinance and its enforcement would invade legitimate property rights. Dibrell v. City of Coleman (Tex. Civ. App.) 172 S. W. 550; City of Austin v. Cemetery Ass'n, 87

**2 SOUTH WESTERN REPORTER, 2d SERIES** (Tex.

Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; Goar v. Rosenberg, 53 Tex. Civ. App. 218, 115 S. W. 653; San Antonio v. Salvation Army (Tex. Civ. App.) 127 S. W. 860; Robinson v. Galveston, 51 Tex. Civ. App. 292, 111 S. W. 1076; Coal Co. v. Conley, 67 W. Va. 129, 67 S. E. 613; Dobbins v. Los Angeles, 195 U. S. 235, 25 S. Ct. 18, 49 L. Ed. 169; Philadelphia Co. v. Stimson, 223 U. S. 620, 32 S. Ct. 340, 56 L. Ed. 570.

[19] What we have said disposes of appellant's propositions in so far as they relate to the criminal prosecution, but he also attacks the provisions of the ordinance authorizing the police power to abate the nuisance. On this issue the ordinance provided:

"The chief of police and all police officers of said city are hereby authorized and required to go in the daytime in and upon any building or premises whether public or private for the purpose of abating such nuisance pursuant to any order of any court."

[20-22] The only power given to the court is to abate the nuisance and charge the cost against the defendant. This attempted delegation of power by the city of Port Arthur to its police department was void. Appellant's building and equipment for the operation of this public dance hall, though kept for an unlawful purpose, did not constitute a nuisance per se; that is, the building and equipment were not intrinsically nuisances. It was the abuse of them which constituted the nuisance. The property in this building and equipment is protected by the Constitution from such a summary process, and can be taken or demolished for public use only "on the award of competent authority and compensation therefor." Miller v. Burch, supra; Crossman v. Galveston, supra; Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116; Yates v. Milwaukee, 10 Wall. (U. S.) 497, 19 L. Ed. 984. But, since the danger to appellant's property is not imminent, and cannot become so until after other steps have been taken, the refusal of the injunction at this time is sustained, but without prejudice to appellant's rights to renew his application for injunction to restrain appellee from the summary destruction of his property in the manner provided by the terms of the ordinance, should the threat be made.

[23] One Abe Amuny joined appellant Bielecki in his petition and prayer for injunctive relief, and specially pleaded that he was neither the owner nor operator nor manager of the dance hall, and was not responsible civilly or criminally for its operation. He asked for relief on the general ground that he was being threatened with criminal prosecutions under the terms of the ordinance. His allegations brought him directly within the rule invoked by appellee

on the authorities cited by appellee that a person threatened with criminal prosecution for the violation of a municipal ordinance is not entitled to relief by injunction. The judgment as to appellant Amuny is in all things affirmed.

Finding no errors in the judgment appealed from, it is in all things affirmed on the conditions stated herein.