FREDERICK MINKE

v.

WILLIAM E. HOPEMAN.

1. NUISANCE—*when equity will enjoin before a trial at law.* A court of equity may interfere, by injunction, to abate a nuisance, before the fact of the business being a nuisance is established at law, where there is danger of irreparable loss, or material injury being done, before a trial at law can be had, as, where a slaughter house is erected near the dwelling house of another, and the business creates an offensive and unwholesome stench, and is likely to produce sickness or disease.

2. SAME—*acquittal on indictment no bar to equitable relief.* The trial and acquittal of one indicted for a nuisance will not deprive a court of equity of jurisdiction to enjoin the carrying on of a slaughter house in such a manner as to become a private nuisance. The fact that the statute gives a remedy by indictment, does not deprive the court of its equitable jurisdiction.

3. SAME—*of the decree.* On bill to enjoin a nuisance near a private residence, arising from the manner in which a slaughter house and the business therein was carried on, the decree restrained the defendant from conducting his business in such a manner as to be offensive and injurious to the complainant and his family in the occupation of his premises, leaving the right to carry on the business in a proper manner, and was *held* to be subject to no just objection.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Messrs. RICHOLSON & SNOW, for the appellant.

Mr. L. B. CROOKER, and Mr. H. T. GILBERT, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, to enjoin a nuisance. It is alleged in the bill, that complainant owns and occupies a farm, consisting of 240 acres; that he has erected thereon a dwelling house and out-buildings, and that the property has cost a large sum of money, and that he occupies the premises as a home for his family. It also appears, from the allegations of the

bill, that the defendant, a butcher by trade, purchased a farm adjoining the premises of complainant, on the south; that the house and buildings on defendant's farm are directly south of complainant's residence, about 30 rods distant; that the defendant is engaged in the business of slaughtering, on his premises, hogs, cattle and sheep, and rendering the tallow and lard accumulated in the prosecuting of the business; that the defendant keeps a large lot of hogs on the premises, which are fed with the blood and offal and refuse matter derived from the business; that said business created a strong, disagreeable, unhealthy and sickening stench, which, especially in hot weather, when the wind was south, was "wafted" into the dwelling house of complainant, and was offensive and nauseating to complainant and his family; that, in consequence of the offensive and unhealthy stench, members of complainant's family have been made sick; that, at times, the stench was so disagreeable that the members of the family were compelled to leave the table, and vomit; that the business of defendant is so conducted as to create disease, and it is a damage, in a pecuniary point of view, and depreciates the value of complainant's farm.

The prayer of the bill is, that the defendant may be enjoined from prosecuting the business of slaughtering animals or rendering tallow or lard on the premises, or within such a distance of the dwelling of complainant as will create the nuisance complained of.

The defendant answered the bill, and the cause proceeded to a hearing on the bill, answer and proofs, and the court rendered a decree, in substance, that the defendant be perpetually enjoined from carrying on or conducting the business in such a manner as to be offensive to complainant, and injurious to him or his family in the use, occupation and enjoyment of his dwelling house and farm.

There is some conflict in the evidence, as is usual in a case of this character, in regard to the extent of the stench caused by the slaughtering of animals on the premises of the defend-

ant, in the slaughter house erected thereon for that purpose, but the decided weight of the testimony, in our judgment, fully sustains the allegations of the bill. But, disregarding the evidence, appellant contends the decree can not be sustained, and the main point relied upon to sustain his position, as we understand the argument, is, that a court of chancery will not interfere by injunction until the question whether a nuisance exists shall have been tried before a jury in an action at law.

It may be conceded that the older authorities seemed to favor the position of appellant, but, in modern times, such has not been the rule, as will appear from the authorities bearing upon the question. Kerr, page 337, says: " The interference of the court by interlocutory injunction being founded on the existence of the legal right, and having for its object the protection of property from irreparable injury pending the trial of the right, a man who comes to the court for an injunction to restrain nuisance, must be able to satisfy the court that he has a good *prima facie* title to the right which he asserts, and that there is danger of irreparable, or at least material, injury being done in the meantime, before the trial of the legal right can be had." Eden on Injunctions, in concluding the discussion of this question, on page 276, says: " It is no objection to the granting of an injunction, that the plaintiff has commenced an action at law. In one instance where this was the case, it was offered to discontinue the action, if necessary to entitle the parties to the injunction, but Lord Eldon held it immaterial." To the same effect is *Attorney General* v. *Mehal*, 3 Meriv. 687.

Wood on Nuisances, 812, declares the rule in the following emphatic language: " Formerly, this power (of interfering by injunction) was exercised sparingly, and only in extreme cases, at least until after the right and the question of nuisance had been first settled at law. But now, the only remedy for the abatement of a nuisance, except where special provision is made therefor by statute, is in a court of equity, and the juris-

diction is predicated upon the broad ground of preventing irreparable injury, interminable litigation, a multiplicity of actions, and the protection of rights." In *Walcott* v. *Matick,* 3 Stockton, 204, the same principle is announced.

In the late case of *Wahle* v. *Reinbach,* 76 Ill. 323, where the question arose whether a court of chancery would take jurisdiction before it had been determined in a court of law, by a trial before a jury, that a nuisance in fact existed, it was held, that where the injury resulting from the nuisance is, in its nature, irreparable, as, when loss of health, loss of trade, destruction of the means of subsistence or permanent ruin to personal property will ensue from the wrongful act or erection, courts of equity will interfere by injunction.

This case is one in which a court of equity should, with more freedom, take jurisdiction to grant the relief prayed, than the case last cited, as here, the nuisance already exists, while in that case the object of the bill was to prevent a threatened nuisance. The injury resulting to the complainant and his family, here, is irreparable, if the testimony introduced on behalf of complainant be true, and we perceive no ground to doubt its veracity. The complainant's residence, on account of the stench created by the defendant, has been rendered unsafe to occupy; the air he formerly breathed in perfect security, has become, at times, so completely impregnated with poison arising from the slaughter house of the defendant, that the health, and perhaps the lives, of complainant and his family are in peril. Under such circumstances, it would be a reproach upon the powers of a court of equity to hold the complainant was bound to endure the wrongs of the defendant until a jury should pass upon the facts in an action at law.

It has also been suggested that the defendant has been indicted, tried, and a jury found him not guilty. We do not regard this fact of sufficient importance to deprive a court of equity of jurisdiction. On the trial of an indictment, the defendant would be entitled to the benefit of a reasonable doubt, and although the evidence might clearly preponderate

against him, yet the jury might acquit.   We are aware of no authority which holds that a court of equity should be concluded by a verdict in a case of that character.   The bare fact that the statute gives a remedy by indictment, does not deprive the court of its equitable powers in this class of cases.

Objection has also been made to the peculiar terms of the decree, but the decree is not liable to serious, objection.   It enjoins the defendant from conducting his business in such a manner as to be offensive and injurious to complainant or his family, in the occupation of his premises.   He has the right to carry on his business, but not in such a way as to injure his neighbors. He can remove his slaughter house to a remote part of his farm, and there conduct his business, if the stench should not prove injurious to others.

The decree did not seek to deprive the defendant of the right to engage in or prosecute his business, but only from conducting it in such a manner as to be offensive and injurious to others, and in this regard it is right.

As we perceive no error in the record, the decree will be affirmed.

*Decree affirmed.*