(June 13, 1913.)

## L. L. MILLER, Appellant, v. L. A. BLUNCK, Respondent.

[133 Pac. 383.]

SUFFICIENCY OF EVIDENCE—REVERSAL ERROR.

    1. Where there is a conflict in the evidence, and substantial evidence supports the findings and judgment, this court will not reverse the judgment.

    2. *Held,* in this case, that there is substantial evidence to support the findings and judgment.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

An action for debt for the sale of personal property. Judgment for defendant. *Affirmed.*

G. W. Lamson, for Appellant.

The acts and conduct of the respondent constitute a ratification of the acts of Barteau, as agent either in the capacity of exclusive agency or as a partner of Blunck. (31 Cyc. 1263.)

It was the duty of respondent, upon the receipt of statement and demand for payment, to have informed the appellant of the true relationship between him and Barteau, if such relationship were other than indicated by the action of the appellant.

"As a general rule, the principal, upon learning of the unauthorized act of the agent, if he does not intend to be bound thereby, must within a reasonable time repudiate it." (31 Cyc. 1275.)

George H. van de Steeg, for Respondent.

The sharing of profits is evidence that he who shares them is a partner, but not conclusive evidence. The intention of the parties must control. The relation of partners is formed by contract, or by the acts of the parties which amount to

a contract.    (*Johnson v. Rothchilds;* 63 Ark. 518, 41 S. W.
996; *Parchen v. Anderson,* 5 Mont. 438, 51 Am. Rep. 65, 5
Pac. 588.)

"Where there has been but a single transaction, pretty clear
evidence of a partnership, of an intent by all of the associates
to create a partnership, is required."    (30 Cyc. 372, 383.)

The evidence that there was no partnership also proves
that there was no intention on the part of the respondent to
constitute Barteau his agent.    The facts taken as a whole
should be examined into on the question of agency.    (1 Am.
& Eng. Ency. 948, 950.)

"The party setting up agency must prove it; and to estab-
lish agency the evidence must be clear and convincing."
(*Ames v. Murray Mfg. Co.,* 114 Wis. 85, 89 N. W. 836.)

"Where evidence is conflicting on authority, agency cannot
be implied."    (*Droste v. Metropolitan Hotel Supply Co.,* 69
App. Div. 611, 74 N. Y. Supp. 613.)

STEWART, J.—This action was instituted by the appel-
lant to collect a balance due in the sum of $462.80 upon the
purchase price of 630 boxes of apples alleged to have been
sold by appellant to the respondent.    The defendant denied
the sale and denied the payment of $250 as part payment on
the purchase price of the apples, but admits that $250 of
his money was so applied and paid to plaintiff by one Sid
Barteau, and the defendant alleges that Barteau wrongfully
and without warrant or authority from him, and without his
knowledge, did so pay and apply the funds of the defendant
as payment upon said sale, and denies that the respondent is
indebted to plaintiff in the sum of $462.80 or any sum.

The cause was tried by the court and findings of fact were
made as follows: (1) That the plaintiff did not sell and
deliver on the 18th day of October, or at any time, the apples
described in the complaint, and defendant did not promise to
pay the sum of $712.80 for such apples; (2) That the defend-
ant did not pay plaintiff the sum of $250, or any sum at all,
to apply as part of the purchase price of said apples, and
that the same was paid without any warrant or authority

from the defendant; (3) That the defendant is not indebted to the plaintiff in the sum of $462.80, or any sum at all, on account of apples purchased by him from the plaintiff, or sold and delivered to the plaintiff.

As a conclusion of law the trial court finds that the plaintiff is not entitled to judgment against the defendant for the sum prayed for, and that plaintiff take nothing by the action, and that the defendant recover judgment. Judgment was rendered accordingly.

The facts as shown by the evidence are about as follows: That prior to the transaction involved the defendant and one Sid Barteau had a conversation at Nampa which resulted in the purchase by Blunck of Barteau's crop of fancy and extra fancy apples at the agreed price of $1.35 per box; that said parties estimated that Barteau's crop would amount to about three cars; that Barteau should ship the apples to Blunck at New York for the New York market. It was also agreed that Blunck would make arrangement at a bank in Nampa whereby the bank would advance to Barteau the sum of $250 on each car of Barteau's crop of apples purchased by Blunck, upon presentation to the bank of the bill of lading. This arrangement applied to Barteau's crop of apples and not to any other apples that Barteau might ship to Blunck, and this is shown clearly by the evidence.

The agreement between Barteau and Blunck was entered into at Nampa, and was made before Blunck and Barteau discussed or made reference to any other apples purchased from anybody else, other than the crop of Barteau. Another conversation was had between Blunck and Barteau relative to the shipment of apples, on the day Blunck left Nampa for New York, wherein Barteau told Blunck that he might be able to pick up apples and ship them to him. This was with reference to apples other than the Barteau crop; in this conversation Blunck agreed to keep Barteau posted as to market conditions, and to notify him when to ship the apples in case Barteau picked up any others. Blunck in this conversation in no way authorized Barteau to buy any apples for him, but simply agreed with Barteau that he would look after the

apples that Barteau picked up after they arrived at the market, if Barteau cared to pick up some and ship them to him at New York, and it was then agreed that Barteau have for his services in picking up and shipping the apples one-half of the profits realized upon the sales made by Blunck in New York.

After the arrangement had been made with Barteau Blunck left for New York, and from New York Blunck wrote Barteau a letter of explanation and information so that Barteau could decide whether or not he cared to ship any apples that he might pick up, and in that letter Blunck tells Barteau that he does not want to take any chances himself; tells Barteau how the apples are sold, and that they will bring just what they are worth.

At this time L. L. Miller, the appellant, and George B. Bradley were partners under the firm name of Nampa Grain and Elevator Company, and were engaged in buying and selling fruit, grain and other farm produce as wholesalers. On the 18th of October, the appellant and Bradley had a car of apples packed and loaded ready for shipment to Texas. Barteau had witnessed the packing of all or a portion, and opened negotiations with Blunck with the view to Blunck's purchasing the car, and Barteau testifies that he had a transaction with Bradley, the partner of appellant: "He said he had a carload of apples loaded, and I said, 'Mr. Blunck wants apples very badly; he thinks he can do well with them. What will you take for them?' They told me and I wired Blunck there was a car of apples on the track loaded. . . . . I got a telegram back, a night letter, next day, to ship the apples to a certain commission house. . . . . I wired Blunck first."

"Nampa, Idaho, Oct. 17, 1911.

"L. A. Blunck,

"307 West 98th St., New York.

"Car loaded can buy one fifteen two fifty Delaware Red hundred Black Twig hundred fifty Seek no Farther fifty

Baldwin all fancy and extra fancy packed together eighty choice at dollar.

"Bolden bot Nonce apples answer quick.

"BARTEAU."

"New York, N. Y., Oct. 18, 11.

"Sid B. Barteau,

"Nampa, Idaho.

"I wired this A. M. from Rae and Hatfield office to send car to them meaning Delaware Red Black Twig Baldwin which you wired me about will get about two twenty five for them here the other apples sent to Fanning wire size of this lot for Rae and Hatfield.

"H. BLUNCK."

This latter wire, dated October 18th and signed by H. Blunck, was evidently in answer to the telegram of October 17th signed by Barteau and sent to Blunck.

On October 18th Blunck sent to Barteau the following telegram:

"New York, October 18th, 1911.

"Sid B. Barteau,

"Nampa, Idaho.

"Bill car to Rae and Hatfield wire car number soon as shipped route Erie at Chicago mail manifest.

"L. A. BLUNCK."

On September 28th Barteau wired Blunck as follows:

"L. A. Blunck,

"307 W. 98 Street,

"New York.

"Jonathans one fourth each one hundred twelve twenty five thirty eight and fifty Winesap one third hundred twenty five thirty eight and fifty Rome beauties and Newtown all hundred twenty five and larger wire at once if you want them.

"S. B. BARTEAU."

On September 29th Blunck sent a telegram to Barteau, Nampa, Idaho.

"S. B. Barteau,

"Nampa, Idaho.

"Forward car as soon as possible to James M. Fanning 291 Washington St., bill car over Erie Railroad be sure and make this shipment extra good so to make name if this is a success can handle twenty cars wire when to expect car.

"S. A. BLUNCK."

On October 7th Blunck sent a telegram to Barteau as follows:

"Sid B. Barteau,

"Nampa, Idaho.

"Make up car Jonathans Rome ship Winesap Newtowns later buy these three cars can handle two a week, so get all you can Jonathans sold two fifty yesterday get a car off at once, bill over Erie to New York, J. M. Fanning, 391 Washington St. wire.

"S. A. BLUNCK."

The evidence shows that the appellant testified that Mr. Bradley told him about the telegram and that he told Barteau, "one of you fellows has to pay for them"; that he held Blunck just as good as Barteau; that the account on the books was in the name of Blunck.

This is practically all the evidence in the case, and the trial court found: (1) That the appellant did not sell or deliver on the 18th day of October, 1911, 630 boxes of apples, and that the respondent did not promise to pay the plaintiff the sum of $712.80 for the same; (2) That the defendant did not pay the plaintiff the sum of $250 or any sum as part payment on the purchase price for the 630 boxes of apples; (3) That the respondent is not indebted to the plaintiff in the sum of $462.80, or any sum.

The principal and only contention upon this appeal is whether the evidence supports the findings of the court. An examination of the evidence shows no particular issue of fact except as to whom the appellant sold the apples, whether to Blunck or to Barteau. An examination of the evidence, to our minds, shows clearly that the respondent and Barteau

had two separate conversations with reference to the purchase of apples. The first related to the purchase of Barteau's crop of apples, and for which the respondent agreed to pay the sum of $1.35 per box, and to advance through the citizens' State Bank the sum of $250 per car on each car of said Barteau's crop. There is some contention as to whether the $250 to be advanced by respondent was applicable only upon the crop of apples purchased by respondent from Barteau, or whether such advance was to be made upon any apples that Barteau might ship to Blunck. The agreement, however, made between Blunck and Barteau had reference solely and only to the Barteau crop. There was nothing said between the parties with reference to this advancement, except that it was to be applied upon the Barteau crop.

The cashier of the bank testified, and his testimony was corroborated by other testimony, that Blunck instructed the bank before leaving for New York that he had bought Mr. Barteau's crop, and he wanted the bank to advance $250 on each car of apples of Barteau's crop, and this was the arrangement made and in pursuance of which the $250 advanced to Barteau was paid to the appellant on the car purchased by Barteau from the appellant, and was clearly without authority from Blunck, and the trial court did not err in so finding.

The second conversation was a conversation which related to the acts of Blunck in New York, that if Blunck found the market right, and it seemed probable that it would pay to ship additional cars of apples, he would inform Barteau, and if Barteau saw fit to pick up other apples and ship them, the respondent would handle them on the market for one-half of the profit, but in that conversation nothing was said by the parties with reference to advancing $250 on the apples picked up and shipped by Barteau, or any other sum.

At the time the appellant made the contract with Barteau to sell him the car of apples in controversy, Blunck knew nothing about Barteau's representations to appellant, and when Barteau wired him that he could buy a car of apples

already loaded at a certain price, Blunck went to Rae & Hatfield, commission men, and ascertained that the market conditions were right,' and the commission firm would take the apples, and then Blunck wired Barteau to ship the car. Now, at that time Blunck did not know that Barteau had bought the apples for him or that he had drawn $250 against the respondent's bank account, or that the appellant did not know that the respondent was interested in any way in the transaction, and did not know the deal Barteau was entering into with appellant, but after receiving the letter he took steps to protect himself, and after correspondence with the appellant the appellant wrote respondent and said: "We beg to inclose you herewith statement of your account on apples showing a balance of $462.80. We are surprised that we have not received this money before this time, as when we sold this car to Mr. Barteau to be shipped to you, we were to receive $250 down, which he paid us, and the balance within ten days after car arrived in New York."

The agreement apparently between the respondent and Barteau as to the purchase of apples other than the Barteau crop was, that Barteau was to pick up apples and send them to New York, and that Blunck should sell the same and that the two parties would divide the profits made upon the sale, and this is the relationship that arose between Blunck and Barteau, and although partnership was not alleged in the answer, yet that was the agreement as to the method of handling the apples picked up and shipped by Barteau, and we have no doubt whatever that the intention of the parties was that a partnership was provided for in the profits realized from the sales, and that while Barteau was the purchaser, he was to be jointly entitled to one-half the profits and Blunck to the other half, and Blunck was to be the agent of Barteau to make the sale.

We have no doubt whatever but that Barteau made the purchase from the appellant of the apples in controversy in this case, and that he in no way was the agent of Blunck.

We have examined errors assigned as to the admission of evidence, and we find no error. The judgment is *affirmed.* Costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.