(No. 15254.—Reversed and remanded.)
CHARLES A. PHELPS *et al.* Plaintiffs in Error, *vs.* WILLIAM O. WINCH *et al.* Defendants in Error.

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

1. NUISANCES—*general rule as to when equity will enjoin a business as a nuisance.* Where the evidence is conflicting and the injury doubtful, equity will not enjoin the operation of a business on the ground that it is a nuisance until the question of the nuisance has been settled by a suit at law, but where the business is so offensive as to materially interfere with ordinary physical comforts measured by the habits and feelings of ordinary people, and the damages are of a nature as cannot be adequately compensated for in a suit at law, equity will grant an injunction to abate the nuisance.

2. SAME—*when equity will enjoin operation of dance pavilion as a nuisance.* Equity will enjoin the operation of a dance pavilion at a resort occupied by residences where the facts found by the master and approved by the chancellor clearly show that the operation of the pavilion by the defendants in the manner in which it is operated seriously injures the complainants' premises as places of residence, and that noises, such as the starting of from fifty to one hundred automobiles in the middle of the night, are of such a character as to seriously affect the comfort of any normal person residing in the vicinity.

THOMPSON, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

ELAM L. CLARKE, for plaintiffs in error.

EUGENE M. RUNYARD, for defendants in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Plaintiffs in error, Charles A. Phelps, Frank G. Karg and Adelaide Glennon, filed their bill August 2, 1920, in the circuit court of Lake county, against William O. Winch, Emma Winch and Homer Winch, for an injunction against defendants restraining them from operating a dance pavil-

ion on lots 7 and 8 in Smith's subdivision on the southerly shore of Channel lake, in the town of Antioch, Lake county, or from conducting and maintaining any entertainments in the pavilion by which the peace and quiet of plaintiffs in error might be disturbed. The court denied plaintiffs' motion for a preliminary injunction and also overruled a demurrer of defendants to the bill. After the defendants answered the bill and replications filed, the cause was referred to the master in chancery to take testimony and report his conclusions of law and fact. A large amount of testimony was taken on the respective sides of the case, and the master, after overruling objections of defendants, filed a report finding that the pavilion was a nuisance to complainants, and recommended that defendants be enjoined from operating the place in such an unreasonable manner as to interfere with the reasonable comfort and enjoyment of life by complainants or other persons of ordinary sensibility occupying their premises. The circuit court sustained exceptions of defendants to the master's report and entered a decree dismissing the bill for want of equity. Complainants prosecuted an appeal to the Appellate Court for the Second District, and that court affirmed the decree. On petition of complainants for writ of *certiorari* the case is brought to this court for review.

Channel lake is about two miles from the village of Antioch, is about two miles long and from a quarter to a half mile wide, with a large portion of its shores wooded and rising in bluffs from twenty to thirty feet. The lake somewhat resembles a boot, with the top to the north and the toe extending southwesterly. Smith's subdivision is on the sole, or southerly side, of the lake. The lots all front northwesterly on the lake and extend back to the public highway. There are twenty-one lots in that subdivision, improved by their owners. The Channel Lake Pavilion, which is owned and operated by defendants, is on lots 7 and 8. Lot 10 is owned by complainant Adelaide Glennon and is improved

by a cottage and garage representing an investment of $7500. Lots 12 and 13 and the northeasterly half of lot 14 are owned by the complainant Phelps, and are improved by a frame house and other buildings representing an investment of $25,000. Lots 15, 16, 17 and 18 and the southwesterly half of lot 14 are owned by complainant Karg and are improved by a cottage and other buildings representing an investment of $12,000. Mrs. Glennon's property is 50 feet from the pavilion, the Phelps property 150 feet and the Karg property 275 feet. Channel lake is a much frequented summer resort place for people living in Chicago and that vicinity. Most of the residences are only occupied during the summer season, but complainant Phelps occupies his residence at least part of the time during the winter season. The pavilion was built by the Winches in the fall and winter of 1919 and spring of 1920. It is a frame building, originally 60 by 120 feet, its sides enclosed with shutters. It is not ceiled or plastered inside, and there were four sleeping rooms up-stairs, toilet in the basement, a large porch on the side next to the lake, leading down to a pier which extended out into the lake. The floor was divided into a dancing hall in the southwest corner, 33 by 72 feet, and the balance of the space was occupied by a soda fountain, billiard and pool tables, box-ball alleys and candy counter. Since 1920 an addition has been built on the northeast side, 36 by 84 feet, and the dancing floor enlarged to 44 by 84 feet, and the space re-arranged by moving the box-ball alleys into the new part and also moving the billiard and pool tables and the candy counter. The pavilion formal opening for business was June 26, 1920, and it was operated continuously until Labor Day. An orchestra was provided for dancing. The pavilion opened at 8:00 o'clock in the morning and remained open until 11:00 or 11:30 every night except Saturdays and holidays, when it remained open until midnight or after. Dancing began every night about 8:00 o'clock and continued until 11:00 or a little later, ex-

cept on Saturday night, when it continued until midnight. There was also dancing on Sunday afternoons from 2:30 to 5:00. The music was furnished by four college boys, with a piano, saxophone, banjo and drum, and was the character of music suited to the present day methods of dancing, called "jazz" music. The dances and other amusements carried on in the pavilion were largely patronized by the people in the vicinity, many of whom came in automobiles, numbering from 50 to 100 in an evening, the large numbers being on Saturday nights. The box-ball alleys and pool and billiard tables were used during the daytime and until the pavilion closed at night.

Complainants allege in their bill, and the proof strongly tended to support the allegation, that the noise of the music, the dancing, box-ball alleys, and noise of automobiles coming and going, racing their engines as they started, shifting gears and opening cut-outs, prevented the reasonable comfort and enjoyment by the complainants of their respective homes, and would so continue to interfere with the ordinary physical comfort of ordinary persons, generally, in complainants' homes if the operation of the pavilion was continued.

There was some conflict in the testimony of the respective parties, but we think it clearly preponderates in favor of complainants and fully justified the master's finding of facts. The master, after describing the use made of the pavilion and its proximity to complainants' premises, found as facts that the rolling of balls on the box-ball alleys, the music, which was suited to dances of the present period, laughter, applause, making announcements, shuffling of feet, the noises and confusion when the dance breaks up, such as calling back and forth, starting cars, blowing horns, closing shutters, can be distinctly heard in complainants' houses, and bright lights of the cars flash across them as they are leaving or getting ready to leave the neighborhood of the pavilion, and that the noises interfere with the ordinary

309—11

conversations in complainants' houses and disturb them in their use, prevent rest and sleep, and make their homes much less desirable. The chancellor overruled defendants' exceptions to the master's findings of fact, and ordered in the decree that the master's findings of fact be, and they were, approved.

Defendants say their business is not a nuisance *per se* and the complainants' right to relief is by an action at law. They contend the case comes within the rule that equity will only afford relief by injunction against alleged amusements where the case is free from substantial doubt. If the right to relief be doubtful either as to the law or the character of the facts proved, equitable relief should be denied. It has been decided that where the evidence is conflicting and the injury doubtful, equity will not interfere until the question of the nuisance has been settled by a suit at law. (*City of Pana* v. *Central Washed Coal Co.* 260 Ill. 111.) It has also been many times decided that where a business is offensive to such a degree as to materially interfere with ordinary physical comforts, measured not by the standard of persons of delicate sensibilities and fastidious tastes and habits but by the habits and feelings of ordinary people, and the damages are of a nature which cannot be adequately compensated for in a suit at law, equity will grant an injunction. (*Oehler* v. *Levy,* 234 Ill. 595, and authorities cited.) *Wente* v. *Commonwealth Fuel Co.* 232 Ill. 526, is one of the cases cited in that opinion. In that case it was said: "Where the legal right of a complainant is clearly established and the unreasonable and unlawful use by the defendant of its property to the injury of the complainant is also clearly proved, it is not necessary that the question should first be determined in a suit at law." In *Minke* v. *Hopeman,* 87 Ill. 450, the appellant contended a court of chancery would not enjoin a nuisance until the question whether a nuisance existed had been determined in an action at law. The court said: "It may be conceded that the

older authorities seemed to favor the position of appellant, but in modern times such has not been the rule, as will appear from the authorities bearing on the question." Other cases to which we refer are *Oswald* v. *Wolf*, 129 Ill. 200; *Dierks* v. *Commissioners of Highways*, 142 id. 197; *Deaconess Home and Hospital* v. *Bontjes*, 207 id. 553.

In *First M. E. Church* v. *Cape May Grain and Coal Co.* 73 N. J. Eq. 257, the court said: "While defendant is entitled to the enjoyment of its property in the pursuit of a lawful business, that business must be conducted with due regard to the well recognized rights of surrounding property owners. When such business becomes creative of conditions which clearly render the appropriate enjoyment of surrounding property impossible the rights of others are invaded, and equity will restrain the persistent pursuit of such injuries. * * * The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance such as may offend the taste or disturb the nerves of a fastidious or over-refined person; but, on the other hand, it does not allow anyone, whatever his circumstances or condition may be, to be driven from his home or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity."

*Gilbough* v. *West Side Amusement Co.* 64 N. J. Eq. 27, involved the application for an injunction to restrain the making of a noise which it was alleged rendered complainant's dwelling at times uncomfortable to an unlawful degree. The court said: "That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventive remedy of the court of equity is thoroughly established. The reason why a certain amount of noise is or may be a nuisance is, that it is not only disagreeable but it also wears upon the nervous system and produces that feeling which we call 'tired.' That the sub-

jection of a human being to a continued hearing of loud noises tends to shorten life I think is beyond all doubt. Another reason is that mankind needs rest and sleep, and noise tends to prevent both."

It seems unnecessary to multiply authorities. The facts found by the master and approved by the chancellor in his decree clearly showed that the operation of the pavilion by defendants in the manner in which it was operated seriously injured complainants' premises as places of residence, deprived complainants of reasonable comfort and the rest they had a lawful right to enjoy, and rendered their homes much less desirable and comfortable. It makes no difference that the proof showed the pavilion was orderly and well regulated as a place of amusement. The noises which were caused by so using the pavilion were so nearly continuous and of such a character as to seriously affect the comfort of any normal person situated as the complainants were. In addition to the noises in the pavilion it caused the congregation on and adjacent to the premises of a large number of automobiles,—from 50 to 100 an evening. It could not be otherwise than that the noise and confusion of starting and getting that number of cars out, so near complainants' residences, at 11 or 12 o'clock at night, would greatly disturb people in the near vicinity. While defendants' business was not unlawful, it was not of so useful a character as would justify the denying of the relief prayed.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded, with directions to the circuit court to enter a decree enjoining defendants from the operation of the pavilion in such manner as to interfere with the reasonable comfort and enjoyment of life by complainants and other persons of ordinary sensibility occupying their premises.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting.