ROY v. CHEVROLET MOTOR CAR CO.

STAFY v. SAME.

1. NUISANCE—INJUNCTION—EQUITY.
   In suit by property owners to enjoin alleged nuisance resulting from use of steam hammers in automobile factory, causing noise and vibration, and from smoke, monoxide gas, and noxious odors, injunction was properly denied, where to have granted it would have been highly inequitable, resulting in far greater injury to defendant than that of which plaintiffs complain.

2. INJUNCTION—DISCRETION OF COURT—ARBITRARY ACTION.
   Granting injunctive relief is within sound discretion of court, and decision must not be arbitrary, but must be based on facts of particular case.

3. EQUITY—INJUNCTION—ADEQUATE REMEDY AT LAW.
   Strict legal right, if incompatible with equities of case, does not necessarily entitle one to equitable redress, especially if injured party has reasonably clear and adequate remedy at law.

4. SAME—MULTIPLICITY OF SUITS.
   Avoiding multiplicity of suits is not conclusive reason for intervention of equity.

Appeal from Wayne; Webster (Arthur), J. Submitted January 19, 1933. (Docket No. 122, Calendar No. 36,082.) Decided April 4, 1933.

Separate bills by John Roy and others and Stanley Stafy and others against Chevrolet Motor Car Company, a division of General Motors Corporation, a Delaware corporation, to restrain the continuance of an alleged nuisance. Cases consolidated for hearing. Bills dismissed. Plaintiffs appeal. Affirmed.

*Leon Dreifuss,* for plaintiffs.

*Stevenson, Butzel, Eaman & Long,* for defendant.

North, J.  In these two suits, submitted and considered as one, plaintiffs seek to have defendant restrained from continuing an alleged nuisance.  In each case the circuit judge decreed dismissal of the bill of complaint without prejudice to the recovery in suits at law of such damages, if any, as plaintiffs have sustained.  Plaintiffs have appealed.

Plaintiffs, upwards of 40 in number, allege that they own and occupy homes located on the easterly side of St. Aubin avenue and on Lumpkin avenue which parallels St. Aubin and is one block to the east, in the city of Hamtramck.  St. Aubin avenue extends along the easterly side of defendant's property, which consists of a large manufacturing site occupied by tracks, buildings, etc., where defendant employed ten or twelve thousand men.  Since 1917 defendant has continued to develop and enlarge its manufacturing plant.  In 1928 it began to occupy and use a large building it had just previously constructed on the westerly side of St. Aubin avenue opposite the properties of some of the ·plaintiffs. In this building, which stands approximately 200 feet west of the center line of St. Aubin avenue, is located defendant's forge plant, where it operates both day and night powerful steam hammers.  In addition to other machines of like character, it here uses five 12,000-pound hammers in forging crank shafts.  When in operation each of these machines has a striking force of 120,000 pounds.  These five hammers are installed on a concrete mat or foundation 160 feet by 32 feet and 6 feet 6 inches deep. The operation of these huge machines produces noise and vibrations.  Defendant, in ways which need not

be detailed, attempted to overcome this objectionable feature. Finally, prompted at least in part by a desire to protect neighborhood property, defendant erected another building between its forge plant and St. Aubin avenue. This new building, used by defendant for tempering springs and known as its spring plant, was of extra height and otherwise constructed in such a manner as would protect neighboring property from the noise and vibrations attending operation of defendant's steam hammers, or at least would reduce these features of defendant's operations to a minimum. This spring plant is adjacent to and extends along St. Aubin avenue approximately 640 feet, and is 137 feet wide.

Plaintiffs' original bills of complaint were filed before construction of the defendant's spring plant; and plaintiffs therein allege that the noise and vibrations caused by the operation of defendant's steam hammers constitute a nuisance, that it has resulted in serious physical damage to plaintiffs' buildings, has rendered them untenantable, has impaired the health of the occupants, has deprived them of sleep, and otherwise damaged them both in person and in property. In supplemental bills of complaint filed since the construction of defendants' spring plant, the plaintiffs allege that defendant operates approximately 22 fuel-oil burning furnaces which throw off monoxide gas, a blue smoke, and noxious odors, and that because of such gas, smoke, and odors, and also because of the noise from these oil burners operating practically 24 hours of each working day, the living conditions in plaintiffs' homes are greatly impaired, in that they are not able to open windows for ventilation, to sleep at night, or to dry clothes out of doors.

The voluminous testimony taken in the circuit court is in direct and emphatic conflict as to the

extent plaintiffs' rights are invaded, if at all, in the manner alleged. The circuit judge, who visited the premises while defendant's plant was in operation, reviewed the testimony carefully and in his opinion filed in the cause clearly intimates that in his judgment plaintiffs' claims are exaggerations, and that the vibrations of which plaintiffs complain "are not sufficient to amount to a serious inconvenience;" and he also found that plaintiffs had not established their claim of an alleged nuisance resulting from the use of the oil burners in defendant's spring plant. The circuit judge came to the conclusion that, notwithstanding the various grievances alleged by plaintiffs, they were not entitled to injunctive relief, and that, under the circumstances of the case, if plaintiffs have in fact sustained damage in the manner alleged, they have an adequate remedy in an action at law. On this appeal the issue is whether on the record presented the circuit judge reached the right conclusion.

These further facts are pertinent: At the time plaintiffs filed their bills of complaint and for a number of years prior thereto, the locality in which they resided was far from being a strictly residential district. Instead, it might properly be denominated "a heavy industrial district," and at least to some degree there existed the attendant disadvantages of smoke, noise, vibrations, and odors. Further, both the Michigan Central Railroad and the Grand Trunk Railroad pass through the locality and make it especially desirable as a location for manufacturing enterprises requiring shipping facilities. These two railways cross at a point commonly known as Milwaukee Junction, which is but a short distance from the homes of plaintiffs. As was natural, this district developed industrially rather than

as residential. In a comparatively small area, approximately 200,000 men were employed in manufacturing plants there located. Further, it seems undisputed in this record that use of defendant's steam hammers in the manner in which they were operated is essential to defendant's business. Plaintiffs do not seek relief on the theory that these machines are improperly installed, carelessly operated, or that conditions could be improved by any reasonable means other than those already resorted to by defendant, except it is urged in behalf of plaintiffs that this phase of defendant's activities might be located and carried on by defendant at a point more remote from plaintiffs' dwellings. However, it is self-evident that this would necessitate the abandoning of a portion of defendant's plant constructed especially for this phase of its work and at a cost of approximately $1,850,000. But aside from this, it does not satisfactorily appear from the record that an attempt to remove its forge plant to some other part of defendant's manufacturing site would wholly obviate the conditions of which plaintiffs complain, if such conditions are as bad as plaintiffs contend. Nor does it appear that such an attempt at removal would not result in merely transferring the alleged nuisance from plaintiffs' properties to those of others residing in this locality.

For the purpose of decision here, we may assume (without so adjudicating) that plaintiffs' rights to some extent have been invaded in the manner alleged in the bills of complaint; yet in view of the record presented we are forced to the conclusion that it would be highly inequitable to grant the injunctive relief sought by plaintiffs. The damage to defendant and to its employees would be far greater than that of which plaintiffs complain. They have

observed for years the development of defendant's plant at an expenditure of millions of dollars; and it was self-evident to all that the growth of this and other industrial plants in the locality would continue to render it less and less desirable as a residential district. To summarily interfere with carrying on an essential phase of defendant's manufacturing activities would be to do an injustice rather than to mete out equity. Granting injunctive relief is within the sound discretion of the court. The exercise of such discretionary power must not be arbitrary. Decision must be based upon the facts of the particular case. A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress. Especially is this true if the injured party has a reasonably clear and adequate remedy at law. Avoiding multiplicity of suits is not a conclusive reason for intervention of equity. In the instant case literal application may well be made of the following statement by Chief Justice Graves, in *Fox* v. *Holcomb*, 32 Mich. 494:

"So far as we can judge from the record, a mode of redress so radical would operate against the interests of all parties and eventuate not only in great public inconvenience, but with a pecuniary severity upon the interests of the defendants entirely disproportionate to the nature and extent of the grievance of complainant Fox. Strict legal right, in contradistinction to what is equitable, is not a necessary criterion of equitable redress. A court of equity always endeavors to shape its administration of relief in such way as to avoid oppression or the entailment of consequences of unnecessary rigor."

The applicability of the rule of granting or withholding equitable relief has been announced and fol-

lowed repeatedly by this court. *Hall* v. *Rood,* 40 Mich. 46 (29 Am. Rep. 528) ; *City of Big Rapids* v. *Comstock,* 65 Mich. 78; *Potter* v. *Railway,* 83 Mich. 285 (10 L. R. A. 176) ; *Mackenzie* v. *Frank M. Pauli Co.,* 207 Mich. 456 (6 A. L. R. 1305) ; *Monroe Carp Pond Co.* v. *River Raisin Paper Co.,* 240 Mich. 279 ; *Adams* v. *Kalamazoo Ice & Fuel Co.,* 245 Mich. 261. Many other cognate cases might be cited. The general proposition is thus stated in 1 High on Injunctions (4th Ed.), § 740, p. 703:

"And in granting injunctions against nuisances, as in other cases of relief by injunction, the court may properly be guided by the consideration of the relative convenience and inconvenience of the parties; and if it appears that the benefit resulting to the plaintiff from the granting of the writ will be slight as compared with the injury to the defendant, the relief may be denied and the plaintiff left to the pursuit of his remedy at law."

In accord with the law as announced in the above cited authorities, on the record here presented, we are fully satisfied that the circuit judge reached the right conclusion.

The decree entered in the circuit court is affirmed, with costs to appellee.

McDonald, C. J., and Clark, Potter, Sharpe, North, and Wiest, JJ., concurred. Butzel, J., did not sit.